FINANCIAL GENERAL BANKSHARES, INC.

v.

Eugene J. METZGER, Appellant.

FINANCIAL GENERAL BANKSHARES, INC., Cross-Appellant

v.

Eugene J. METZGER.

Nos. 81–1968, 81–1999.

United States Court of Appeals, District of Columbia Circuit.

Argued March 15, 1982.

Decided May 18, 1982.

Robert L. Weinberg, Washington, D. C., with whom Robert C. Post, Washington, D. C., was on the brief, for Eugene J. Metzger, appellant in No. 81–1968 and cross-appellee in No. 81–1999.

Edwin E. McAmis, New York City, with whom Douglas M. Kraus and Erskine D. Henderson, New York City, were on the brief, for Financial General Bankshares, Inc., appellee in No. 81–1968 and cross-appellant in No. 81–1999.

Before WRIGHT, MacKINNON, and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

When substantial federal questions are presented in the District Court, that court may in its discretion exercise pendent jurisdiction over state claims arising out of the same nucleus of operative fact. Considerations of economy, convenience, and fairness may favor the exercise of jurisdiction; on the other hand, principles of comity and the desirability of "a surer-footed reading of applicable law"[1] support the determination of state claims in state court. If the federal claims in a case are resolved before trial, the District Court retains power to decide the state claims, but may exercise its discretion to dismiss them without prejudice.

In this case, after the federal securities law claims had been settled or dismissed as to all defendants, the District Court retained pendent jurisdiction over common law claims that one defendant, an attorney, had breached his fiduciary duty to the plaintiff, his client. The court held a three-day trial and issued a lengthy decision dealing with novel and difficult issues of local law. No court of the District of Columbia has provided any guidance regarding the standards defining an attorney's fiduciary duties, the construction of the conflict of interest provisions of the Code of Professional Responsibility, or the remedies for breach. Under these circumstances, we find that the District Court abused its discretion in exercising pendent jurisdiction over the local claims.

## I. HISTORY OF THE LITIGATION

Financial General Bankshares, Inc. (FG) filed this lawsuit in the United States District Court for the District of Columbia after receiving information that a group of Middle Eastern investors had acquired twenty percent of FG's common shares and intended to obtain control of the company by acquiring additional stock. The complaint, filed February 17, 1978, sought relief against unnamed persons and entities believed to be purchasing FG's shares, and also against named individuals and corporations alleged to be participating in the takeover scheme.[2] One of these defendants, appellant Eugene J. Metzger, is an attorney who had served as counsel to FG and who owned approximately 1.6 percent of FG's common stock.

The complaint alleged that Metzger and the other defendants had violated several provisions of the federal securities laws[3]

1. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

2. The defendants named in the original complaint, filed February 17, 1978, were Bert Lance, allegedly employed by the Middle Eastern investors as a business consultant; Bank of Credit and Commerce International, a United Kingdom bank allegedly acting on behalf of the investors; Agha Hasan Abedi, president of BCCI; Eugene J. Metzger, an attorney practicing law in Washington, D. C. and appellant in this case; Jackson Stephens, a major FG shareholder, businessman, and commercial banker; Systematics, Inc., a data processing corporation which performed data processing services for banks; Stephens, Inc., an investment banking firm controlled by Stephens; and 25 John Doe defendants believed to be purchasing FG shares. Joint Appendix (JA) 33–35. The amended complaint filed March 21, 1978 added Labelle Lance, Bert Lance's wife and a shareholder in FG; and five Middle Eastern inves-
tors—Sheikh Kamal Adham, a minister of the Saudi Arabian government; Faisal Saud Al-Fulaij, a citizen of Kuwait; His Royal Highness Sheikh Sultan Bin Zaid Al-Nahyan, the crown prince of Abu Dhabi; Abdullah Darwaish, financial advisor to the royal family of Abu Dhabi; and Sheikh Mohammed Bin Zaid Al-Nahyan, younger brother of H.R.H. Sheikh Sultan of Abu Dhabi. JA 67–68.

3. The complaint alleged violations of § 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (1976), and the regulations promulgated thereunder (requiring persons acquiring beneficial ownership of more than 5% of any class of an issuer's equity securities to file disclosure statements); §§ 14(d) and 14(e) of the 1934 Act, *id.* §§ 78n(d) and 78n(e), and the regulations promulgated thereunder (regulating tender offers and prohibiting misstatements and material omissions); and § 10(b) of the 1934 Act, *id.* § 78j(b), and Rule 10b–5 promulgated thereunder (prohibiting manipulative and deceptive devices and artifices to defraud).

and the Virginia Take-Over Bid Disclosure Act. FG sought preliminary and permanent injunctive relief barring the defendants from attempting to influence the management of FG and from acquiring any further shares of FG stock. It also asked the court to order the defendants to divest themselves of the FG stock they had previously purchased. In addition, the complaint asserted a pendent local claim against Metzger. Asserting that Metzger had breached his common law fiduciary and ethical obligations to FG and its shareholders, FG sought both compensatory and punitive damages. Joint Appendix (JA) 28–50.

On March 18, 1978 the Securities and Exchange Commission filed an action against the defendants named in the FG complaint, also asserting violations of the federal securities laws. On the same day the SEC's action was settled by entry of consent judgments and undertakings. The defendants filed disclosure statements pursuant to Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d) (1976). They were permitted to make a tender offer for FG's stock provided they received all requisite banking and regulatory approvals, tendered for 100 percent of the shares at a specified minimum price, and compensated former FG shareholders who had sold shares to the defendants at a lower price.

FG then, on March 21, 1978, amended its complaint to allege that the defendants' disclosure statements were false and misleading in violation of Section 13(d). JA 72–74. On April 27, 1978, finding that FG had shown a likelihood of prevailing on its Section 13(d) claim, the District Court entered a preliminary injunction. The defendants were ordered not to acquire any further interest in FG common stock until they had offered rescission to the shareholders from whom they had purchased shares during December 1977 and January 1978. At the same time the court dismissed FG's causes of action against all defendants under other federal securities law provisions and the Virginia takeover statute. JA 1264.[4]

Extensive discovery took place during the following two years. See Docket Entries, JA 14–25. On May 16, 1980 the court granted FG leave to file an amended complaint realleging the Section 13(d) claims against the defendants, adding new Section 13(d) defendants, and realleging the common law fiduciary claims against Metzger. JA 256–291. On May 21, 1980 all defendants except Metzger reached a settlement agreement with FG; they were subsequently dismissed voluntarily by a stipulation and order signed on July 25, 1980. JA 358–359. Under the terms of the settlement FG agreed not to oppose the defendants' takeover attempt; the defendants agreed to offer a premium price for FG's shares. JA 311–320.[5]

Metzger was left as the sole defendant in the case. He moved to dismiss the federal securities law claims against him and argued that, if FG's federal claims against him were dismissed, its pendent local law claims against him for breach of fiduciary duties should also be dismissed. JA 293–302. On August 2, 1980 the District Court entered summary judgment for Metzger on the federal claims on the ground that FG was no longer entitled to any injunctive relief. However, the court retained pendent jurisdiction over the common law claims. JA 360–362.

After a three-day trial, from November 19 to 21, 1980, the court held in favor of

4. On July 20, 1978 the District Court granted summary judgment in favor of defendants Jackson Stephens and Stephens, Inc. on the § 13(d) claim. JA 136–139. It also denied summary judgment for plaintiff FG on its fiduciary duty claim against defendant Metzger, appellant in this case, concluding that material facts remained in dispute. JA 140. On August 2, 1978 Metzger moved for summary judgment on the § 13(d) claim, the sole remaining federal cause of action against him. JA 128–132. The District Court took no action on Metzger's motion.

5. The tender offer contemplated by the settlement has now been successfully completed. The Middle Eastern investors are in control of Financial General Bankshares, Inc. Washington Post, April 9, 1982, at C8.

plaintiff FG. The District Court's 54-page memorandum opinion was filed on July 31, 1981. JA 1263–1316, *reported at* 523 F.Supp. 744 (D.D.C.1981). In addition to making detailed findings of fact, the court resolved novel and unsettled issues of District of Columbia law in order to decide the case.

First, to determine whether Metzger had violated his common law fiduciary duties, the court relied on the standards set forth in the Disciplinary Rules of the American Bar Association Code of Professional Responsibility. 523 F.Supp. at 762–763. The Code specifies that the Disciplinary Rules are "mandatory in character," but expressly states that it "makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct." DISTRICT OF COLUMBIA BAR, CODE OF PROFESSIONAL RESPONSIBILITY AND OPINIONS OF THE D.C. BAR LEGAL ETHICS COMMITTEE 1 (1980) (footnotes omitted). These matters were left to the discretion of local courts. The courts of the District of Columbia have not had the opportunity to define the relationship between the Code and the common law fiduciary obligations imposed upon attorneys.

Second, the District Court applied several provisions of the Disciplinary Rules to Metzger's conduct, a task raising difficult questions of interpretation. The Code proscribes conflicts of interest and condemns divided loyalties, but it does not resolve the subtle problems arising when outside counsel represents a corporate client whose shareholders, directors, and management are in disagreement. *See Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 HARV.L.REV. 1244, 1334–1352 (1981). The court found that three of Metzger's activities had violated specific Disciplinary Rules. First, the court concluded that Metzger had violated the attorney's duty of neutrality (DR 5–105) by participating actively in a dissident group of shareholders without disclosure to management. 523 F.Supp. at 765–767. Second, the court found that Metzger had sent a letter to

another of his clients, proposing a scheme to sell a controlling block of FG stock—including his own shares—to a foreign bank at a premium price. This action, the court held, violated the duty to preserve client confidences (DR 4–101(B)) and the duty to refrain from undisclosed personal dealings involving potential conflicts with the client's interests (DR 5–101(A) and DR 5–105(B)). *Id.* at 767–769. Third, the court found that Metzger had simultaneously represented FG and the Middle Eastern investors attempting to secure control over FG. In the court's view, Metzger's undisclosed dual representation violated DR 5–105, the duty of undivided loyalty to the client. *Id.* at 769–771. In addition, the court held that Metzger's use of a list of FG shareholders to solicit sales of FG stock violated DR 4–101(B)(3), which forbids use of a client's confidences or secrets for the advantage of the attorney or a third person. *Id.* at 771–772.

The District Court concluded:

From the outset of his representation, Metzger's attitude toward FG was marked by bad faith, secrecy, and self-dealing. He persistently placed his prerogatives as a shareholder above his fiduciary obligations as an attorney, substituting his own business judgment for that of the corporation he was hired to serve. His behavior fell far short of the high standards imposed on lawyers by common law and by the Code of Professional Responsibility.

*Id.* at 772.

Having concluded that Metzger had violated common law standards of fiduciary duty, the District Court also broke new ground in imposing a remedy. Without finding that the violations were causally related to pecuniary damage suffered by FG or profit accrued by Metzger, the court ordered Metzger to repay $80,284.12, the entire fee he had received from FG for professional services, exonerated FG from payment of $15,261.95 in outstanding legal bills, and imposed an additional $80,284.12 in punitive damages. *Id.* at 773. The Dis-

trict Court cited no District of Columbia cases, and we have discovered none, which award a monetary remedy to a client for an attorney's breach of fiduciary duty in the absence of proven pecuniary loss to the client or proven financial gain to the attorney. On the other hand, the District of Columbia courts have not foreclosed the possibility that, in an appropriate case, disgorgement of fees might be the appropriate remedy.

On appeal Metzger challenges both the District Court's retention of pendent jurisdiction over the local fiduciary duty claims and its decision on the merits. We do not reach the merits, because we conclude that, under the circumstances, the District Court abused its discretion in exercising pendent jurisdiction over novel and unsettled questions of District of Columbia law. We vacate the judgment of the District Court and remand with instructions to dismiss after the defendant has waived any applicable statute of limitations in the Superior Court of the District of Columbia and has agreed to forgo evidentiary objections to the depositions, documents, and exhibits admitted into evidence by the District Court. In light of our disposition of the appeal, we dismiss FG's cross-appeal for prejudgment interest.

## II. PENDENT JURISDICTION

The Supreme Court's decision in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), establishes a two-part test of whether a federal court should exercise pendent jurisdiction over a state law claim. The District Court must first determine whether it has the *power* to determine state law issues joined in a complaint with federal questions. Even if power exists under Article III, however, the court must then weigh a number of factors to determine whether to exercise its *discretion* to decide the state law issues. In this case we hold that the District Court abused its discretion by considering only one of the factors relevant to the exercise of discretion, judicial economy, and ignoring another factor, the existence

of novel and unsettled questions of state law, which in our view should have been decisive.

Under the criteria set forth in *Gibbs*, the District Court had the power to decide FG's common law fiduciary claims against Metzger. The federal claim based on Section 13(d) of the Securities Exchange Act of 1934 was substantial enough to confer subject matter jurisdiction on the court, *see Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138. Indeed, FG demonstrated sufficient likelihood of success on the merits of the Section 13(d) claim that the District Court entered a preliminary injunction on April 27, 1978. *Gibbs* also requires the federal and state claims to "derive from a common nucleus of operative fact." *Id.* We agree with the District Court that this criterion is satisfied. JA 262. "[C]onsidered without regard to their federal or state character," FG's claims are such that it "would ordinarily be expected to try them all in one judicial proceeding * * *." *See Gibbs, supra*, 383 U.S. at 725, 86 S.Ct. at 1138.

### A. *Factors Guiding the Exercise of Discretion*

As the Supreme Court emphasized in *Gibbs*, even if the District Court had the power to determine the pendent claim, "That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." 383 U.S. at 726, 86 S.Ct. at 1139. *Gibbs* articulates the basic principles underlying the doctrine of pendent jurisdiction—principles which require the District Court to weigh and balance several factors. The justification of pendent jurisdiction, the Court wrote,

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them * * *. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by pro-

curing for them a surer-footed reading of applicable law. * * *
*Id.*[6]

In dictum in the *Gibbs* opinion the Court seemed to establish a firm rule for exercise of the District Court's discretion: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* Frequently this outcome will be consistent with the general principles cited above. If the federal claims have been resolved at an early stage in the litigation, leaving state claims to the state courts will not necessarily require a wasteful duplication of effort, and a state court will provide a more accurate, authoritative determination of the applicable law. *See Wham-O-Mfg. Co. v. Paradise Manufacturing Co.*, 327 F.2d 748, 753 (9th Cir. 1964) (cited in *Gibbs*); Note, *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts*, 62 COLUM.L.

REV. 1018, 1025–1026, 1044 (1962) (also cited in *Gibbs*).[7]

Nevertheless, as a number of federal courts have recognized, ironclad adherence to the *Gibbs* dictum would occasionally disserve the basic policies of pendent jurisdiction. If extensive pretrial proceedings have already occurred before dismissal of the federal claims, considerations of "judicial economy, convenience and fairness" may support retention of pendent jurisdiction by the federal court rather than dismissal of state claims, which would require the parties to bring a new civil action in state court. Relying on the Supreme Court's emphasis on judicial economy and convenience in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), a post-*Gibbs* case involving a pendent federal statutory claim,[8] a number of Court of Appeals decisions have upheld the exercise of pendent jurisdiction by District Courts after dismissal of federal claims.[9] The Supreme Court

6. Other factors set forth in the *Gibbs* opinion to guide exercise of discretion are not germane to the case before us: whether the state issues substantially predominate over the federal claims, whether the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong, and whether there is a likelihood of jury confusion if the state and federal claims are tried together. 383 U.S. at 726–727, 86 S.Ct. at 1139–1140.

7. The District Court in this circuit has frequently followed the *Gibbs* dictum. *See, e.g., Nat'l Tire Wholesale, Inc. v. Washington Post Co.*, 441 F.Supp. 81, 88 (D.D.C.1977), *aff'd mem.*, 595 F.2d 888 (D.C.Cir.1979); *Houlihan v. Anderson-Stokes, Inc.*, 434 F.Supp. 1324, 1329 (D.D.C.1977); *Wachovia Bank & Trust Co. v. Nat'l Student Marketing Corp.*, 461 F.Supp. 999, 1010 (D.D.C.1978), *rev'd on other grounds*, 650 F.2d 342 (D.C.Cir.1980), *cert. denied*, 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981); *Marshall v. District of Columbia*, 392 F.Supp. 1012, 1018 (D.D.C.1975), *rev'd and remanded in part on other grounds*, 559 F.2d 726 (D.C.Cir. 1977).

8. The Court in *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), emphasized that the pendent claim was essentially one of federal policy, citing *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139, but its language was broad enough to apply to pendent jurisdiction over state claims as well. In *Rosado* the federal constitutional claims had become moot after

substantial time and energy had been expended on the case. The Court wrote, "We are not willing to defeat the commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation—by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim." 397 U.S. at 405, 90 S.Ct. at 1214.

9. In several cases citing *Rosado v. Wyman, supra* note 8, Courts of Appeals have upheld District Courts' exercise of pendent jurisdiction over state claims, even though the court conducted further proceedings on the state claims after dismissal or settlement of the federal claims. *State of North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 371 (8th Cir. 1980) (state claim decided on remand after dismissal of federal claims affirmed); *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979) (state claim tried after federal claim dropped on morning of trial); *Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1155 (10th Cir. 1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (state claims decided in jury trial after federal claims settled before trial; Court of Appeals asserted that "[i]t would be a shocking waste of time and money now to require this cause to be relitigated in the state court"); *Gray v. Internat'l Ass'n of Heat & Frost Insulators*, 447 F.2d 1118, 1120 (6th Cir. 1971) (state claim decided at jury trial on remand after dismissal of federal claims

has not directly modified the *Gibbs* dictum, but it has not rejected the more flexible approach taken by the lower federal courts. *See, e.g., Transok Pipeline Co. v. Darks,* 565 F.2d 1150 (10th Cir. 1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *State of Arizona v. Cook Paint & Varnish Co.,* 541 F.2d 226 (9th Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *see* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3567 at 451–453 (1975).[10]

### B. *Judicial Economy, Convenience, and Fairness*

In this case the District Court looked solely to judicial economy considerations when it decided to retain pendent jurisdiction over the common law fiduciary claims against defendant Metzger. The court explained that extensive discovery on these causes of action had taken place, that the court was familiar with the relevant facts, and that plaintiff was ready to go to trial on the local law issues. On this basis it concluded that, under the principles enunciated in *Gibbs,* it should exercise its jurisdiction over the pendent common law claims. JA 262.

The court overestimated the judicial economy and convenience to be gained by retaining pendent jurisdiction. Discovery had been pursued actively during a two-year period, but much of that effort would not need to be duplicated in an action in the District of Columbia courts. The Federal Rules of Civil Procedure permit wide-ranging discovery "to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." Advisory Committee Notes, 1946 Amendment to Rule 26, Subdivision (b). Material may be discoverable even if it will be inadmissible at trial, as long as it appears reasonably calculated to lead to discovery of admissible evidence. Federal Rule of Civil Procedure 26(b)(1). In addition, the standards of admissibility for documentary material and other exhibits in the Superior Court are similar to the Federal Rules of Evidence applicable in the District Court. *See* S. Graae, District of Columbia Statutory and Case Law Annotated to the Federal Rules of Evidence 8.1–10.20 (Young Lawyers Section of Bar Ass'n of District of Columbia 1976). To alleviate FG's concern that some deposition evidence used in the District

---

affirmed); *Gem Corrugated Box Corp. v. Nat'l Kraft Container Corp.,* 427 F.2d 499, 501 n.1 (2d Cir. 1970) (state claim decided at jury trial after federal claims dismissed by stipulation of the parties; *see Brunswick v. Regent,* 463 F.2d 1205, 1206–1207 (5th Cir. 1972) (state claims tried after federal claims dropped at pretrial conference; citing *Gem Corrugated Box, supra*); *cf. United States v. Kember* (D.C.Cir. No. 80–2563, decided March 5, 1982) (slip op. at 5–8) (using *Gibbs* principles to construe 11 D.C.Code § 502(3), giving District Court pendent jurisdiction over District of Columbia criminal offenses originally joined in indictment with federal charges; District Court did not abuse its discretion in holding trial on the D.C. charges even though federal charges were not pursued at trial, because of judicial economy, litigational convenience, and legitimate federal concern with the trial's subject matter).

In other cases, when the federal claims were dismissed before trial and state claims were simultaneously decided on the merits, the District Court's exercise of pendent jurisdiction has been upheld. *See, e.g., Meyer v. California & Hawaiian Sugar Co.,* 662 F.2d 637, 640 (9th Cir. 1981); *State of Arizona v. Cook Paint &*

*Varnish Co.,* 541 F.2d 226 (9th Cir. 1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *Ryan v. J. Walter Thompson Co.,* 453 F.2d 444, 446 (2d Cir. 1971), *cert. denied,* 406 U.S. 907, 92 S.Ct. 1611, 31 L.Ed.2d 817 (1972).

**10.** This court has recognized that *Rosado v. Wyman, supra* note 8, modifies the apparently absolute directive of the *Gibbs* dictum. *See Baurer v. Planning Group, Inc.,* 669 F.2d 770, 775 n.16 (D.C.Cir.1981) (once the federal claims were dismissed by summary judgment, the District Court should have exercised its discretion not to hear pendent claims as long as substantial time and energy had not been expended on these claims; paraphasing *Rosado v. Wyman* and quoting *Gibbs*). In *Network Project v. Corp. for Public Broadcasting,* 561 F.2d 963, 970 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1068, 98 S.Ct. 1247, 55 L.Ed.2d 770 (1978), a case dealing with a pendent federal claim, this court restated the *Gibbs* dictum in a more flexible fashion: "when state and federal claims are joined and the federal claims are dismissed before trial, the state claims should *ordinarily* be dismissed as well") (emphasis added).

Court action might not be admissible in the Superior Court of the District of Columbia,[11] dismissal of the case in federal court will be conditioned on Metzger's waiver of evidentiary objections to material admitted into evidence by the District Court. *See* Part III *infra.*

The expenditure of additional judicial effort after dismissal of the federal claims also undermines the District Court's determination that convenience and economy favored exercise of pendent jurisdiction over the local law claims. The District Court denied Metzger's motion to dismiss the common law claims on August 2, 1980. It then set a trial date, entered a pretrial order, and conducted a three-day trial from November 19 to 21, 1980. *See* Docket Entries, JA 26–27. After receiving proposed findings of fact and conclusions of law from both parties, the court issued a 54-page memorandum opinion on July 31, 1981. JA 1263–1316, *reported at* 523 F.Supp. 744 (D.D.C.1981). None of this expenditure of judicial resources contributed to resolution of any issue of federal law.

## C. Unsettled Issues of Local Law

In addition, in exercising its discretion to retain pendent jurisdiction the District Court did not take into account the novel and unsettled nature of District of Columbia law regarding the fiduciary duties of an attorney to a client. Yet the importance of this factor was articulated in *Gibbs*, which emphasized that state courts would provide a "surer-footed reading of applicable law," 383 U.S. at 726, 86 S.Ct. at 1139, and in the authorities cited by the *Gibbs* opinion.[12] More recently, in two cases applying the *Gibbs* principles in somewhat different contexts, the Supreme Court has reaffirmed the importance of this factor in deciding whether to exercise pendent jurisdiction. In *Moor v. County of Alameda*, 411 U.S. 693, 715–716, 93 S.Ct. 1785, 1798–1799, 36 L.Ed.2d 596 (1973), the Court upheld the District Court's dismissal of a state claim against a pendent party on the ground that

11. FG contends that a substantial portion of the evidence against Metzger is contained in the depositions of Agha Hasan Abedi, the president of BCCI and a foreign resident, and other foreign employees of defendant BCCI. These depositions were taken, for the most part, in London. According to FG's brief, "There is no guarantee that the testimony (by deposition or otherwise) of these foreign individuals could be obtained in any state court action against Metzger, in which they would be non-party witnesses outside the jurisdiction of the state court. Even if they could be deposed as non-party witnesses in a state court action, FG would have been put to enormous delay and expense to recreate a record that already existed in this action." Reply brief for FG at 43–44.

In response Metzger contends that if the BCCI witnesses were unavailable to testify at trial in Superior Court, their prior recorded testimony would be admissible in Superior Court under the former testimony exception to the hearsay rule. Reply brief for Metzger at 13, citing *Epstein v. United States*, 359 A.2d 274, 277 (D.C.1976); *District of Columbia v. Faison*, 278 A.2d 688, 689 (D.C.1971). These cases appear to establish the principle that prior testimony under oath in a proceeding between the same parties involving the same issues may be admitted if the declarant is unavailable to testify. However, we are not aware of any District of Columbia cases admitting sworn testimony taken in a deposition in a previous case. *See* S. GRAAE, DISTRICT OF COLUMBIA STATUTORY AND CASE LAW ANNOTATED TO THE FEDERAL RULES OF EVIDENCE 8.131–8.137 (Young Lawyers Section of Bar Ass'n of D.C.1976).

12. 383 U.S. at 726 n.15, 86 S.Ct. at 1139 n.15. The Court cited language from Judge Magruder's "oft-cited concurrence" in *Strachman v. Palmer*, 177 F.2d 427, 433 (1st Cir. 1949), counseling that "[f]ederal courts should not be over-eager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation." Professor Wechsler's article, cited by the Court, stated firmly, "When uncertainty obtains as to prevailing local doctrine, when that doctrine is enmeshed in clashing policies that render any legal formulation an intrinsically changing concept, the discretion would be exercised to limit federal adjudication to the federal grounds. When, on the contrary, the issue turns on principles well settled by the state, the federal courts can safely undertake the full adjudication of the case." Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 LAW & CONTEMP.PROB. 216, 233 (1948). Other sources cited in the *Gibbs* opinion relied on similar reasoning. *See* Note, *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts*, 62 COLUM.L.REV. 1018, 1042–1043, 1047 (1962) (citing both *Strachman v. Palmer* and Wechsler); Note, 74 HARV.L.REV. 1660, 1661 (1961).

dismissal was a proper exercise of discretion. The District Court had explained that it "would be called upon to resolve difficult questions of California law upon which state court decisions are not legion." *Id.* at 715–716, 93 S.Ct. at 1799, *quoting Rundle v. Madigan*, 331 F.Supp. 492, 495 n.5 (N.D.Cal. 1971). The Court wrote, "As is evident from this Court's decision in *Gibbs*, * * * the unsettled nature of state law * * * [was an] entirely appropriate factor[] for the District Court to consider." 411 U.S. at 716, 93 S.Ct. at 1799. Subsequently, in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), a case involving a pendent federal claim, the Court explained:

> [T]he rationale of *Gibbs* centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment. * * *

*Id.* at 548, 94 S.Ct. at 1385 (distinguishing pendent federal and state claims).

Although the degree of uncertainty in state law is one of several factors that should guide the District Court's discretion, it should be given considerable weight. As Professor Wechsler has noted, "[F]ederal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts." Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 LAW & CONTEMP.PROB. 216, 232 (1948) (cited in *Gibbs*, 383 U.S. at 726 n.15, 86 S.Ct. at 1139 n.15).[13] In addition, as another commentary has noted, "A federal court's holding on a novel issue of state law may unduly limit later state consideration of the problem; a state court will be hesitant to create a conflict with the federal determination because of possible reliance upon that earlier exposition." Note, *UMW v. Gibbs and Pendent Jurisdiction,* 81 HARV.L.REV. 657, 666 (1968). Therefore, when it exercises its discretion, a federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence gives inadequate guidance.

The desirability of obtaining a "surer-footed reading of applicable law" in state courts weighs especially strongly when the federal claims have been dismissed before trial. In those circumstances, judicial economy factors are diminished and it is more likely that a determination of state law will be unnecessary. It is well within the sound discretion of the District Court to decline to retain pendent jurisdiction over novel issues of state law after pretrial dismissal of federal claims. *See, e.g., Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 458 (7th Cir. 1982) (on remand of pendent state claims, after Court of Appeals affirms dismissal of federal claims, District Court has discretion after balancing relevant factors to dismiss pendent claim involving "novel and difficult issues of state law"); *Jones v. Fitch,* 665 F.2d 586, 593 (5th Cir. 1982) (state claims involved "substantial novel questions of state law," a factor supporting the District Court's decision to dismiss the state claim without prejudice); *Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir. 1981) (at least one of the state claims involved a "novel issue under the Alabama banking laws best left to the state courts"; District Court's refusal to exercise pendent jurisdiction affirmed); *Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1324, 1329–1330 (D.D.C.1977) (one factor influencing the District Court's decision to decline pendent jurisdiction was that local law issues

---

13. *See* 50 U.S.L.W. 2620 (April 27, 1982) (discussing recent decision of Alabama Supreme Court in *Alabama v. Taylor.* The Alabama Supreme Court decided that, 11 years earlier, the United States District Court for the Middle District of Alabama had inaccurately stated the common law on whether a married woman must take the name of her husband, *citing* *Forbush v. Wallace*, 341 F.Supp. 217 (M.D.Ala. 1971). The state court added that, at the time *Forbush* was decided, "there was no procedure whereby the federal court could certify a question of state law to this court for instructions." The decision is a good illustration of the hazards federal courts encounter in divining state law.

were "novel and difficult" and "would best be decided by the courts which have most familiarity with the applicable law").

When a District Court reaches out to decide unsettled issues of state law despite the pretrial dismissal of all federal claims, its action may be an abuse of discretion. In *REA Express, Inc. v. Travelers Ins. Co.*, 554 F.2d 1200, 1201 (D.C.Cir.), *cert. denied*, 434 U.S. 858, 98 S.Ct. 182, 54 L.Ed.2d 131 (1977), the District Court had granted summary judgment for the defendant on the federal antitrust claims. It had also dismissed the plaintiff's pendent state claims with prejudice on the ground that Delaware precedents conformed to federal doctrine. This court affirmed the dismissal of the federal claims on the merits, but disapproved the District Court's exercise of pendent jurisdiction over the state claims. Noting that "the issues involved in this case are novel and the trial court found them 'troubling,' " this court quoted the *Gibbs* dictum and required the dismissal of the state claims to be without prejudice. In *REA Express*, as in this case, the District Court decided the state and federal claims after a lengthy period of litigation, but judicial economy concerns did not outweigh the desirability of authoritative state court determination of unsettled issues of state law.[14]

The First Circuit took a similar approach in *Rice v. President & Fellows of Harvard College*, 663 F.2d 336 (1st Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982). A female Harvard Law School student filed suit alleging gender discrimination in the award of grades in violation of several federal statutes. She also brought a pendent state claim that Harvard had breached its fiduciary duty to her as a beneficiary of a charitable trust by discriminating on the basis of sex and failing to maintain the school's facilities up to proper educational standards. Before trial the District Court dismissed the federal claims on the merits, and also held, on the basis of a Massachusetts statute and a state supreme court case, that the plaintiff lacked standing to maintain the state claim. The Court of Appeals affirmed the disposition of the federal claims, but disapproved the District Court's exercise of pendent jurisdiction over the state claims. Noting that dicta in two Massachusetts cases "might be interpreted as support" for plaintiff's claim of standing, it remanded for dismissal of the pendent state claims without reaching the question of standing. The First Circuit's disposition suggests that uncertain questions of state law, even if they can be decided by a federal court without additional judicial proceedings, should be left to state courts once the federal claims have been dismissed.

In this case Financial General Bankshares' fiduciary duty claim raises issues of District of Columbia law that have never been addressed by the District of Columbia courts. Historically the courts of the states have had the power to regulate admission to the bar and to discipline lawyers.[15] Since reorganization of the courts of the District of Columbia in 1970, the local court system has had the same authority as state courts to establish and enforce standards of professional conduct for attorneys.[16] To deter-

14. The complaint was filed in the District Court in 1971; the court's decision was issued in 1976. *REA Express, Inc. v. Travelers Ins. Co.*, 406 F.Supp. 1389 (D.D.C.1976). In our case judicial economy considerations are weaker than in *REA Express*. In *REA Express* the District Court decided the state and federal issues simultaneously on motions for summary judgment; in this case after dismissal of the federal claims additional judicial time and effort had to be expended to decide the local law questions.

15. *See Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979) ("Since the founding of the Republic, the licensing and reg-

ulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions."); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444 (1978) ("the State bears a special responsibility for maintaining standards among members of the licensed professions"; the state's interest in regulating lawyers is especially great because lawyers are essential to the administration of justice).

16. 11 D.C.Code §§ 2501, 2502, 2503 (District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No. 91–358, 84 Stat. 521); *see Feldman v. Gardner*, 661 F.2d 1295,

mine whether plaintiff FG is entitled to relief in this case, a court must decide what standards define a breach of an attorney's fiduciary duty in a situation giving rise to alleged conflicts of interest and alleged disclosure of client confidences. It must also decide whether Metzger's conduct violated these standards and whether disgorgement of fees is an appropriate remedy. Although the District Court devoted considerable time, effort, and care to these questions, in a completely unsettled area of local law a federal District Court opinion is no substitute for an authoritative decision by the courts of the District of Columbia.

We conclude that the District Court abused its discretion by failing to take into account the uncertainty of state law and by proceeding to trial on the local claims after the dismissal of the federal claims.

### III. DISPOSITION OF THE CASE

■ We have concluded that the District of Columbia courts are the proper forum, under the circumstances, for resolution of FG's claims against defendant Metzger. It is possible that, in the absence of waiver or equitable tolling, FG might be subject to a statute of limitations defense in the Superior Court of the District of Columbia. The alleged wrongdoing took place from June 1977 to January 1978. At oral argument, however, counsel for appellant Metzger took the position that the District of Columbia statute of limitations had been tolled during the pendency of this action in federal court. To assure that plaintiff FG may avail itself of the local forum, we vacate the judgment of the District Court appealed from in No. 81–1968 and remand with instructions not to dismiss the case until the plaintiff has filed an action in the Superior Court of the District of Columbia and the defendant has filed in that court a record waiver of any applicable statute of limita-

tions. See McLaughlin v. Campbell, 410 F.Supp. 1321, 1326 (D.Mass.1976) (deciding not to exercise pendent jurisdiction over state law claims, but withholding entry of judgment until it has been established that claims are not barred by the state statute of limitations); cf. U. S. Industries, Inc. v. Blake Construction Co., 671 F.2d 539, 551 (D.C.Cir.1982) (instructing District Court that it may condition its suspension of proceedings pending disposition of suits in D.C. Superior Court upon defendant's abandonment of statute of limitations defenses asserted in those suits).

In addition, the dismissal should be conditioned on Metzger's agreement to waive evidentiary objections to documents, exhibits, deposition transcripts, and other material which were admitted into evidence by the District Court in the trial of this action. See 523 F.Supp. at 748 & nn.6–8 (describing the evidentiary record before the District Court). The parties should not be required to engage in unnecessary duplication of effort and expense in order to litigate this case in the proper forum. Cf. Germain v. Semco Service Machine Co., 79 F.R.D. 85, 87 (E.D.N.Y.1978) (conditioning voluntary dismissal on plaintiff's agreement that discovery materials may be used without duplication of effort in another forum).

In light of our disposition of the pendent claims, FG's cross-appeal in No. 81–1999 for prejudgment interest is dismissed.

*Judgment accordingly.*

1307, 1308 (D.C.Cir.1981), *petitions for cert. filed*, 50 U.S.L.W. 3593 (U.S. Jan. 13, 1982) (No. 81 1335), 50 U.S.L.W. 3696 (U.S. Feb. 16, 1982) (No. 81 1526) (the District of Columbia Court of Appeals, the final arbiter of local law, "has the same compelling interest as a state supreme court in regulating the bar of its jurisdic-

tion"). The District of Columbia Court of Appeals has adopted an amended version of the American Bar Association Code of Professional Responsibility to govern the conduct of lawyers. See DISTRICT OF COLUMBIA BAR, CODE OF PROFESSIONAL RESPONSIBILITY AND OPINIONS OF THE D.C. BAR LEGAL ETHICS COMMITTEE (1980).