Maceo **WILLIS**, Jr., Plaintiff,

v.

Ernest **BELL**, et al., Defendants.

No. 86 C 9589.

United States District Court,
N.D. Illinois, E.D.

Sept. 21, 1987.

---

Robert O. Case, Whitman H. Brisky, Jeffrey E. Schiller, Robert S. Hirschhorn, Walsh, Case, Coale & Brown, Chicago, Ill., for plaintiff.

Diane L. Larson, Judson H. Miner, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Maceo Willis, Jr. ("Willis") sues Chicago Police Officers Ernest Bell ("Bell"), Leonard Kukula ("Kukula"), A. Jones, Jr. ("Jones") and T. O'Connor ("O'Connor"), Chicago Police Superintendent Fred B. Rice, Sr. ("Rice") and the City of Chicago ("City") under 42 U.S.C. § 1983 ("Section 1983") and state law, alleging the deprivation of certain rights guaranteed to an arrestee under both the Constitution and the Illinois Code of Criminal Procedure of 1963, Ill.Rev.Stat. ch. 38, ¶¶ 100–1 to 126–1.[1] All defendants now move to dismiss certain of the state-law claims under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is granted.

### Facts [2]

On February 11, 1985 at 9 a.m. Bell, Kukula, Jones and O'Connor confronted Willis at his place of employment and first requested—but then demanded—that he go with them to police headquarters to answer questions about an "investigation" (¶ 7). "In enforcing their demand," those police officers (¶ 7):

a) refused to allow Willis to contact his fiancee or an attorney;

b) ignored Willis' request to see an arrest warrant;

c) handcuffed Willis and forcibly escorted him to the waiting police car; and

d) failed to read Willis his rights until shortly before arrival at the police station.

Willis was held continuously in police custody until he was arraigned February 13, 1985 (¶ 8). During that period Chicago police officers (including Bell, Kukula, Jones and O'Connor) "took the following actions with regard to Willis" (¶ 8):

a) again denied him the right to contact his fiancee or an attorney for a period extending in excess of 12 hours;

b) failed to provide him with an attorney during that period;

c) questioned him repeatedly throughout the period without an attorney being present;

d) forced him to take part in a police lineup procedure without an attorney being present;

e) refused Willis' repeated requests for food, and denied the opportunity to use the bathroom for extended periods of time. Willis was given no food whatsoever for over 24 hours after his detention;

f) refused to advise him of the charges against him until after questioning Willis for an extended period of time and placing him in the lineup procedure;

g) moved him repeatedly from police station to police station throughout the night before finally incarcerating him in the Cook County Jail on February 12, 1985 thus preventing his parents from seeing him and causing them to go from police station to police station looking for their son; and

h) failed to arraign him until February 13, 1985, over two days after he had first been detained.

### Willis' Claims

Willis' Complaint comprises three counts, each of which seeks damages:

1. Count I sues Bell, Kukula, Jones and O'Connor, alleging they deprived Willis of "the following clearly established and well-settled constitutional and

---

1. All citations to the Illinois Criminal Code (also referred to in this opinion as simply the "Code" or the "Criminal Code") will take the form "Section—." "Section" rather than "Paragraph" will be used because the internal numbering of the Code employs the "§" symbol, although the Smith-Hurd annotated Illinois statutes shifted to the "¶" symbol a few years ago.

2. Rule 12(b)(6) principles require this Court to accept as true all of plaintiff's well-pleaded fac-

tual allegations, drawing all reasonable inferences in plaintiff's favor. *Marmon Group, Inc. v. Rexnord, Inc.,* 822 F.2d 31, 34 (7th Cir.1987) (per curiam). Citations to Willis' Third Amended Complaint (the "Complaint") will take the form "¶ —." All the subparagraphs in both ¶¶ 7 and 8 are quoted in full in the text, reflecting Bell's verbatim charges as to defendants' conduct.

statutory rights" (¶ 11, also quoted verbatim):

 a. freedom from unlawful detention without warrant or charge;

 b. right to have an attorney present during forced detention, questioning, and other investigative procedures; and

 c. freedom from inhumane treatment while detained.[3]

 2. Count II sues:

 (a) City for having "knowingly sanctioned, and carried out ... a policy[4] of extended detention of suspects to allow further investigation of the alleged offenses" in violation of Willis' constitutional and statutory rights; and

 (b) Rice for having been "responsible for carrying out enforcement of the regulations of ... City, and further responsible for the conduct of city police officers."

 3. Count III sues Bell, Kukula, Jones and O'Connor, this time alleging they violated rights guaranteed to Willis under Code Sections 103–1 to 103–8, "including, but not limited to," Sections 103–1(b), 103–2 and 103–3.[5] Defendants move to dismiss only Count III.[6]

### Count III: Private Right of Action Under the Code

Neither side contests, for purposes of this motion, that Bell, Kukula, Jones and O'Connor intentionally deprived Willis of rights to which he is entitled under the Illinois Criminal Code. What the parties dispute instead is whether Willis may sue those police officers for *damages* because they violated those Code provisions. Nothing in the Code expressly provides for such a damages action.[7] Nor has any court ever examined those Code provisions and found (or not found) an implied private right of action for damages under them.

**3.** According to the Complaint's jurisdictional statement (¶ 5), Willis' constitutional claims are brought under the Fifth, Sixth and Fourteenth Amendments. Of course, in Section 1983 claims (which by definition target state actors) it is imprecise—though highly convenient and therefore almost universally done—to refer to violations of Bill of Rights provisions (which by definition bind only the federal government). Instead all Section 1983 claims are necessarily grounded in the Fourteenth Amendment, construed to incorporate the Bill of Rights guaranties.

**4.** [Footnote by this Court] Willis says that policy is embodied in Police General Order 78–1, § 6, ¶ (c)(2).

**5.** Those last-cited provisions read:

**103–1. Rights on arrest**

(b) After an arrest without a warrant the person making the arrest shall inform the person arrested of the nature of the offense on which the arrest is based.

**103–2. Treatment while in custody**

(a) On being taken into custody every person shall have the right to remain silent.

(b) No unlawful means of any kind shall be used to obtain a statement, admission or confession from any person in custody.

(c) Persons in custody shall be treated humanely and provided with proper food, shelter and, if required, medical treatment.

**103–3. Right to communicate with attorney and family—Transfers**

(a) Persons who are arrested shall have the right to communicate with an attorney of their choice and a member of their family by making a reasonable number of telephone calls or in any other reasonable manner. Such communication shall be permitted within a reasonable time after arrival at the first place of custody.

(b) In the event the accused is transferred to a new place of custody his right to communicate with an attorney and a member of his family is renewed.

**6.** Defendants earlier sought dismissal of claims previously asserted by Willis under 42 U.S.C. §§ 1981, 1982, 1985, 1986 and 1988. In response Willis simply filed his most recent Complaint, eliminating those claims and thus rendering moot the motion to dismiss them.

**7.** Section 103–8 (footnote omitted) provides for the punishment of police officers who violate the previously stated rights (see n. 5) in this manner:

Any peace officer who intentionally prevents the exercise by an accused of any right conferred by this Article or who intentionally fails to perform any act required of him by this Article shall be guilty of official misconduct and may be punished in accordance with Section 33–3 of the "Criminal Code of 1961" approved July 28, 1961, as heretofore and hereafter amended.

Section 103–1(i) negates the exclusivity of the other provisions of Section 103:

Nothing in this Section shall be construed as limiting any statutory or common law rights of any person for purposes of any civil action or injunctive relief.

Thus the issue posed to this Court is one of first impression under Illinois law: Is there an implied private cause of action for violation of certain Illinois Criminal Code provisions? [8] Defendants say the answer is "no." Willis disagrees. Important jurisprudential considerations explored in the next section of this opinion teach that resolution of such novel state-law issues is best left to the Illinois courts. This Court therefore declines to exercise jurisdiction over the claims raised in Count III, instead dismissing those claims without prejudice.

### Pendent Jurisdiction

*United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966) tells why federal courts, though they may have the *power* to decide state law claims,[9] should not exercise that power in every case in which it exists (*id.* at 726, 86 S.Ct. at 1139) (footnotes and citations omitted):

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though

bound to apply state law to them.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Gibbs, id.* goes on to explain those considerations of judicial economy, convenience and fairness to litigants are absent—and so state law claims should be dismissed without prejudice—where:

> 1. the federal claims are dismissed before trial;[10] or
>
> 2. state issues "substantially predominate ... in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought...."

Following *Gibbs,* federal courts have also declined to exercise jurisdiction over state-law claims posing novel or unsettled state-law issues. For example, *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768 (D.C.Cir.1982) decided the lower court had properly declined jurisdiction even after a "lengthy period of litigation" because (680 F.2d at 777) (footnote omitted):

> judicial economy concerns did not outweigh the desirability of [an] author-

---

**8.** Indeed, it oversimplifies matters to speak of Willis' Count III claims as involving only one issue of first impression. There is also the question whether the officers are insulated from liability by whichever Illinois immunity statute is relevant, Ill.Rev.Stat. ch. 85, ¶¶ 2–201 to 2–213, or ch. 85, ¶¶ 4–101 to 4–107—a matter hotly disputed by the parties' memoranda, and also calling for the exploration of uncharted state law waters.

**9.** Such power exists when the state and federal claims derive from a "common nucleus of operative fact" (*Gibbs, id.* at 725, 86 S.Ct. at 1138), as they surely do in this case.

**10.** Our Court of Appeals recently summarized two exceptions to that pretrial dismissal rule in *Moses v. County of Kenosha,* 826 F.2d 708, 711 (7th Cir.1987) (per curiam):

> *Gibbs* establishes that, as a rule, when the court dismisses the federal claim before trial, it also should dismiss any pendent state claim without prejudice, so that the plaintiff may pursue that claim in the appropriate state tribunal. 383 U.S. at 726–27, 86 S.Ct. at 1139. There are two exceptions to this rule. The

first covers the situation where the statute of limitations has run on the pendent claim, precluding the filing of a separate state lawsuit. *O'Brien v. Continental Illinois National Bank & Trust,* 593 F.2d 54, 65 (7th Cir.1979). This exception does not hold, however, if the district court conditions relinquishment of jurisdiction on the defendants' waiving their statute of limitations defense in state court. *Duckworth v. Franzen,* 780 F.2d 645, 656 (7th Cir.1986). Second, and more important for our present purposes, dismissal of the pendent claim is unnecessary when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." *Graf v. Elgin, Joliet & Eastern Ry. Co.,* 790 F.2d 1341, 1347–48 (7th Cir.1986). This exception derives from *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), where the Supreme Court emphasized the "commonsense policy of pendent jurisdiction—the conservation of judicial energy and the avoidance of multiplicity of litigation" in holding that jurisdiction over the federal claim need not exist at all stages of the litigation to support resolution of the pendent claim. *Id.* at 405, 90 S.Ct. at 1214.

itative state court determination of unsettled issues of state law.

Indeed, *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1499–1500 (6th Cir.1984), *vacated on other grounds,* 759 F.2d 546 (6th Cir.) (en banc), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985) found the district court, even after conducting a full trial on the merits of the federal claims, had properly dismissed without prejudice a state law claim raising a novel issue (741 F.2d at 1500):

> Our respect for the role of the state courts as the principal expositors of state law counsels restraint by the federal court in announcing new state-law principles, or applying such principles to novel situations.[11]

Willis' Count III claims obviously raise more than one novel state-law issue.[12] Moreover, resolution of such issues in Willis' favor would effectively require this Court to engage in policymaking. *Galinski v. Kessler,* 134 Ill.App.3d 602, 606, 89 Ill.Dec. 433, 436, 480 N.E.2d 1176, 1179 (1st Dist.1985) (citations omitted) cautions:

> Although the courts have demonstrated a willingness to imply private causes of action where there exists a clear need to effectuate the purpose of an act[,] the judiciary by implying causes of action is assuming policy-making authority, a power more properly exercised by the legislature. The court should exercise such authority with due caution.[13]

That state separation-of-powers principle necessarily applies with even greater force to inhibit a federal court.

Were this Court forced to decide the issues, it would most likely be compelled to rule there is *not* an implied cause of action for damages under the Illinois Criminal Code. That result would be called for not only by the already-identified principles but by the proposition—repeatedly emphasized by our Court of Appeals (see, e.g., *Shaw v. Republic Drill Corp.,* 810 F.2d 149, 150 (7th Cir.1987) and *Gust K. Newberg Construction,* 818 F.2d at 1368)—that a federal district court deciding a pendent state law claim has no business speculating as to state-law trends. Under the *Erie* regime, that role is for the Illinois state courts (if for any court at all).

But resolution of the issues on the merits in that way (by finding there is no implied cause of action) is undesirable for at least two reasons—both identified in *Metzger,* 680 F.2d at 776 (footnote omitted):

> Although the degree of uncertainty in state law is one of several factors that should guide the District Court's discretion, it should be given considerable weight. As Professor Wechsler has noted, "[F]ederal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts." Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code,* 13 Law & Contemp. Prob. 216, 232 (1948) (cited in *Gibbs,* 383 U.S. at 726 n. 15, 86 S.Ct. at 1139 n. 15). In addition, as another commentary has noted, "A federal court's holding on a novel issue of state law may unduly limit later state consideration of the problem; a state court will be hesitant to create a conflict with the federal determination because of possible reliance upon that earlier exposition." Note, *UMW v. Gibbs and Pendent Jurisdiction,* 81 Harv.L.Rev. 657, 666 (1968). Therefore, when it exercises its discretion, a federal court should be reluctant to retain pendent jurisdiction

**11.** [Footnote by this Court] Our own Court of Appeals has cited *Grubb* for precisely that proposition in *Gust K. Newberg Construction Co. v. E.H. Crump & Co.,* 818 F.2d 1363, 1368 (7th Cir.1987).

**12.** See n. 8 as well as the earlier text discussion.

**13.** [Footnote by this Court] *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 389, 59 Ill.Dec. 905, 909, 432 N.E.2d 849, 853 (1982) enumerates five factors to consider in determining whether to imply a private right of action:

> (1) Does the violation alleged contravene the public policy of the State? (2) Are the plaintiffs within the class the statute was designed to protect? (3) Is the injury one the statute was designed to prevent? (4) Is the need for civil actions under the statute clear? (5) Is there any indication that remedies available are limited to those enumerated in the Act?

over a question for which state jurisprudence gives inadequate guidance.

In sum, there are compelling reasons why this Court should decline jurisdiction and dismiss the state-law claims in Count III without prejudice.

Only the judicial-economy concern presents a potential justification for retaining and exercising jurisdiction. But any possible economy gained by deciding the state-law claims as well as the federal ones in federal court is far outweighed by the undesirable effects of this Court's deciding novel state-law issues. That is so because this case (unlike *Metzger* and *Grubbs*) is at the very early stages of litigation. Thus no one—neither the parties nor the Court—has expended much time litigating the state law claims in federal court. In fact, if the parties are truly concerned about having to litigate in two forums, they may readily elect to have the state court (which has concurrent jurisdiction over Section 1983 claims) decide both the state and federal claims. Finally, even if litigation were to proceed in two forums, principles of issue preclusion would obviate the need for both courts to render duplicative factual findings.

### Conclusion

Accordingly this Court declines to exercise jurisdiction over the pendent state-law claims raised in Count III. Those claims are dismissed, without prejudice to their being refiled in state court.[14] This action is set for a status hearing September 25, 1987 at 9 a.m., when counsel are directed to report on the anticipated future course of this litigation.

---

14. Ordinarily this Court's dismissal of pendent state law claims can pose no limitations problems because:

 1. Such dismissal after federal-question claims have been disposed of is really a dismissal for lack of subject matter jurisdiction.

 2. Ill.Rev.Stat. ch. 110, ¶ 13–217 creates a one-year saving provision against the running of limitations where a federal court has so acted.

Here, however, the dismissal is not truly for lack of jurisdiction (*Gibbs* tells us that). Consequently this Court will take a leaf from the *Moses* opinion, 826 F.2d at 711: If the statute of limitations *has* run on the Count III claims, the relinquishment of jurisdiction is conditioned on defendants' waiving their statute-of-limitations defense in state court.