George BROWN, Jr. and Geraldine N. Brown, Plaintiffs,

v.

DISTRICT OF COLUMBIA, Robert J. Bechtoldt, James E. Keifline, Carl A. Occhipint,[1] Seketa Wilson, Robert A. Benningfield,[2] Robert A. Denyer, and John R. Knott, Defendants.

Civ. A. No. 85–3292.

United States District Court, District of Columbia.

June 24, 1986.

---

1. The proper spelling of this defendant's surname is "Oicchipinti."

2. The proper spelling of this defendant's surname is "Bennafield."

James H. Tatem, Washington, D.C., for plaintiffs.

Ariel Mendez, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

George Brown, Jr. and his wife Geraldine N. Brown allege that on about May 21, 1985, defendants James E. Keifline, Carl Oicchipinti, and Seketa Wilson (members of the District of Columbia's Metropolitan Police Department) conducted an unconstitutional and unfruitful search of the Browns' residence for gambling paraphernalia utilized in "numbers" game operations.[3] The plaintiffs allege further that the search was conducted pursuant to an unconstitutional search warrant, issued by the Superior Court of the District of Columbia on the affidavit of defendants Robert J. Bechtoldt, Robert A. Denyer, and John R. Knott (also members of the Metropolitan Police Department). The Browns contend that the unconstitutional, wanton, malicious, and

---

**3.** Defendant officers Bechtoldt, Denyer, and Knott participated in an investigation of a District of Columbia "numbers" game operation. A Detective Hanson (a non-party) passed on a complaint to these defendants, which stated that one Evelyn Penny was conducting an illegal gambling operation. The three officers began surveillance of Penny's activities. Based upon their observations of visitors to Penny's home who had known criminal backgrounds in gambling activities, these officers placed a "trap-and-trace" device on Penny's phone after obtaining an order to do so from the District of Columbia Superior Court. Based upon information obtained with this device, the policemen determined the likelihood of Penny's involvement with a gambling scheme, because several calls to her residence had originated at the phone number of a gambling suspect, Philip Thornton. The officers then placed a court-ordered "pen register" on Thornton's phone, and this device recorded the outgoing calls dialed from that phone. The pen register recorded only that the registered phone's receiver was picked up at specific times, that particular numbers were dialed, and that the receiver was hung up at particular times: it provided no information as to whether conversations transpired. [Deposition of John R. Knott, pp. 5–15.] Between Friday, April 26, 1985 and Friday, May 10, 1985, according to the pertinent pen register chart, the Browns' phone number was dialed forty-five times from Thornton's phone. The officers took this information to a reviewing officer at the Metropolitan Police Department, who approved of their seeking a search warrant for the Browns' house. The information was next reviewed by an Assistant United States Attorney, who also approved the defendants' request to pursue a warrant. Bechtoldt, Denyer, and Knott then obtained a search warrant from the Superior Court, after presenting a sworn twenty-one page affidavit, for the Browns' residence. The subsequent search of the plaintiffs' home was conducted by defendant officers Keifline, Oicchipinti, and Wilson, and uncovered no evidence. However, the affidavit signed by Bechtoldt, Denyer, and Knott had sought search warrants for forty-five different addresses, persons, and automobiles. Out of some thirty-four address searches, only one or two failed to produce gambling paraphernalia. [Deposition of Robert A. Denyer, p. 18.]

grossly negligent conduct of the six [4] police officers resulted, *inter alia,* in the ransacking of their home, injury to their small dog, and personal humiliation, embarrassment, and mental anguish. Mr. and Mrs. Brown seek a total of $350,000 in compensatory and punitive damages from these defendants, and have named the District of Columbia ("the District") as an additional defendant under civil rights and common law employer liability theories.

There remains for the Court to evaluate only the plaintiffs' Fourth Amendment claim, brought pursuant to 42 U.S.C. § 1983, and pendent gross negligence claim against all of the defendants. The matter is before the Court on the defendants' motion to dismiss, or, in the alternative, for summary judgment, under Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure. After due consideration of the briefs, depositions, and supporting exhibits filed in regard to the plaintiffs' claims, the Court concludes that summary judgment shall be entered in favor of defendant Bennafield on both claims against him. In addition, summary judgment shall be entered on the plaintiffs' Section 1983 claim in favor of defendants Bechtoldt, Denyer, and Knott; and the plaintiffs' gross negligence claim against these defendants shall be dismissed without prejudice. The Court concludes also that the Browns' Section 1983 claim against defendants Keifline, Oicchipinti, and Wilson shall proceed to trial; however, the gross negligence claim against these defendants shall be dismissed without prejudice. Finally, summary judgment shall be entered in favor of the District on the Browns' Section 1983 claim; and the gross negligence claim against this defendant, under the plaintiffs' respondeat superior theory, shall be dismissed without prejudice.

## DISCUSSION

### I. *Benningfield (i.e., "Bennafield")*

It is clear from the May 14, 1986 deposition of defendant Bennafield that this po-

lice officer was involved with neither the police investigation that led to the issuance of the challenged search warrant nor the execution of the challenged search itself. Plaintiff has proffered no contrary evidence. Therefore, the Court concludes, as a matter of law, that summary judgment in favor of this defendant on both the Section 1983 and gross negligence claims is appropriate. The Complaint shall be dismissed *in toto* with respect to this individual.

### II. *The Investigation Officers: Bechtoldt, Denyer, and Knott*

#### A. *42 U.S.C. § 1983: Fourth Amendment*

#### 1. *Motion to Dismiss*

In the amended complaint, Mr. and Mrs. Brown make the following allegations in support of their Fourth Amendment challenge to the conduct of the police officers who sought the search warrant for the Browns' residence:

27. That the[se] defendants had no reason to believe that the plaintiffs' premises were part of ... [an] illegal gambling operation as alleged in the defendants' affidavit in support of the search warrant....

\* \* \* \* \* \*

29. That at the time the[se] defendants obtained the search warrant, and prepared the affidavit in support of the search warrant for plaintiffs' residence, the defendants knew or should have known that no form of illegal gambling or gambling activities were conducted from the premises [sic]....

30. That the[se] defendants at the time they requested a search warrant and prepared the affidavit in support of the search warrant for the premises ..., and executed said search warrant on or about May 21, 1985 on said premises, knew or should have known that the plaintiffs were not engaged in any illegal activities.

---

**4.** *See infra* Part I (based on May 14, 1986 deposition of defendant Benningfield (*i.e.,* "Benna-

field"), Court dismisses complaint as to this individual).

31. That the actions of the[se] defendants in obtaining a search warrant, [and in] preparing an affidavit in support of the search warrant ... [were] in direct violation of the constitutional rights of the plaintiffs and [sic] their right to be secure from any unwarranted and illegal search of the residence.

The plaintiffs, however, allege no specific facts to support these conclusory allegations of constitutional impropriety.

The first trio of officers argue that dismissal of the Section 1983 claim is appropriate under Rule 12(b)(6), because, under *Hobson v. Wilson,* 737 F.2d 1, 30 (D.C.Cir. 1984), plaintiffs must articulate "specific facts which support their claims of unconstitutional motives." *See* Memorandum in Support of Amended Motion to Dismiss, or, in the Alternative, for Summary Judgment (*"Motion to Dismiss"*), at 5. In contesting the motion to dismiss, the Browns refer to the May 14, 1986 deposition of Officer Bechtoldt. The plaintiffs are essentially correct in concluding from the deposition that Bechtoldt based his affidavit in support of the search warrant "on the reading from a pen register which was used to monitor incoming calls to a targeted establishment [*i.e.,* the Browns' residence]." Opposition to Motion to Dismiss, or, in the Alternative, for Summary Judgment (*"Opp."*), at 9. They are also correct in concluding both that, "[f]rom the register, the officer could not tell by whom the calls were made ..." and that "Officer Bechtoldt did not conduct any additional investigation ... in compiling information for his [search warrant] affidavit." *Id. See supra* note 3. The depositions of defendants Denyer and Knott corroborate these conclusions. Thus, although the plaintiffs failed to do so in the complaint, they have since furnished the Court with some specific factual allegations that the investigative officers had an unconstitutional motive in seeking the search warrant at issue.

In *Hobson,* a panel from this Circuit stated as follows: "Plaintiffs who fail [in the complaint] to allege any specific facts to support a claim of unconstitutional motive

cannot expect to involve Government actors in protracted discovery and trial.... *Government defendants might move for dismissal or, alternatively, for summary judgment. Then plaintiffs must produce some factual support for their claim to avert dismissal."* 737 F.2d at 30 (emphasis added). In the present case, as noted above, the plaintiffs have, in opposition to the defendants' motion to dismiss, produced "some" evidence of improper motive on the part of the investigative officers. Accordingly, the Court concludes that dismissal is not warranted as to the Browns' Fourth Amendment claim against these defendants for failure to state a claim under Rule 12(b)(6).

### 2. Summary Judgment

However, under Rule 56(b), the Court concludes, as a matter of law, that the Browns have failed to make out a Section 1983 case against these officers. Upon evaluation of the briefs and exhibits filed by both sides with respect to this issue, it is clear that the plaintiffs have failed to meet their burden of proving unconstitutional motive on the part of these defendants in conducting the investigation that led to the issuance of the challenged search warrant.

It is true that the primary evidence upon which these policemen sought a search warrant for the Browns' residence was the pen register print-out that depicted the forty-five calls dialed from Thornton's phone to that of the Browns. *See supra* note 3. The plaintiffs argue that a "print out sheet from a pen register ... [is] insufficient to establish probable cause to support a search warrant, absent any other incriminating evidence against plaintiffs." Supplemental Brief in Opposition to Defendants' Motion to Dismiss or for Summary Judgment (*"Supp.Opp."*), at 1. However, the plaintiffs have cited no authority to support the proposition that, where police officers seek search warrants primarily on the basis of pen register print-outs, such a procedure violates Fourth Amendment rights.

A review of the reported decisions of this Circuit has revealed no case on point. The United States Court of Appeals for the

Sixth Circuit, in *United States v. Algie,* has, however, ruled that pen register data *alone* will not support a Magistrate's determination of probable cause. 721 F.2d 1039, 1043 (6th Cir.1983). In *Algie,* the court concluded that the Magistrate had erred in issuing a search warrant for the premises in which an unregistered phone was located, because the only evidence offered in the warrant application's supporting affidavit was that fifteen phone calls had been dialed from a pen registered phone to the unregistered phone within an eleven-day period. *Id.* The registered phone had been located in an apartment where known bookmakers were conducting their criminal operations. *Id.*

The case before the Court is, however, distinguishable from *Algie.* Here, forty-five calls were dialed from the registered phone to that of the plaintiffs during a fourteen-day period. *See supra* note 3. In addition, in the supporting affidavit signed under oath by Bechtoldt, Denyer, and Knott, these defendants stated that it is "common knowledge among persons in gambling in the Washington, D.C. area ..." that, because daily local horse races end at roughly "3:00 P.M., 4:00 P.M., and 5:00 P.M.," a flurry of numbers game phone calls is usually made shortly after these times. [Defendants' Exhibit A in Support of Motion to Dismiss.] In addition, these defendants stated in their affidavit that, because the results of the Maryland and District of Columbia Daily Lotteries are announced on local television at "7:30 and 8:40 P.M.," respectively, a flurry of numbers game phone calls is usually made in the District of Columbia shortly after these times. [*Id.*] Of the forty-five calls dialed from Thornton's phone to that of the Browns, nineteen calls were placed between 4:09 and 5:58 P.M., depending on the day in question. [*See* Pen Register Chart for Browns' Telephone.] Ten of the forty-five calls were dialed to the plaintiffs' phone between 8:29 and 9:18 P.M., depending on the day in question. [*See id.*] Thus, twenty-nine of the forty-five recorded calls were dialed within the time frames articulated and sworn to by the defendants in their supporting affidavit as being relevant.

Furthermore, defendant Knott has stated under oath that, in a numbers operation such as the one he and the other two investigation officers conducted, each of the phone calls will "be [of] a short duration, very short, maybe less than a minute, depending on how many calls they make to that particular location." [Deposition of John R. Knott, p. 33.] Of the forty-five calls in question, forty-three were for a minute or less, one was for three minutes, and one call was for forty-five minutes. In addition, on most of the days covered by the pen register survey, the majority of calls dialed to the Browns' number were made in clusters. For instance, on May 1, 1985, calls were placed from Thornton's phone to the plaintiffs' phone at the following times: "2029–2029; 2029–2030; 2030–2030; 2031–2031; 2034–2035; 2035–2035; 2115–2115." [*See* Pen Register Chart for Browns' Telephone.]

Therefore, the search warrant at issue in this case was not issued by the Superior Court "solely" on the basis of registered dialings, so that *Algie* is distinguishable. Here, there were three times the number of calls placed to the Browns' phone as were placed to the unregistered phone in *Algie.* Moreover, the times of the calls to the Browns' phone correspond reasonably to the times when numbers game phone calls are usually made in the District of Columbia. The vast majority of these calls lasted for a minute or less, and most of the calls were made in clusters.

■ Given the differences between the *Algie* case and this one, and in the interest of comity, the Court is not willing to conclude, as a matter of law, that probable cause did not exist to support the issuance of the Superior Court search warrant for the Brown's residence. More importantly, such a determination is not essential to the resolution of this action: what must be resolved is whether or not the investigation officers acted reasonably in seeking the warrant from the Superior Court Judge,

based upon the data they had collected with respect to the Browns.[5] The Court concludes that the conduct of these officers was reasonable under the circumstances.

These defendants did not *issue* the search warrant; they simply sought its issuance from a neutral magistrate.[6] In this light, the plaintiffs have demonstrated no evidence of bad faith on the part of these officers in collecting the pen register information during the investigation or in seeking the warrant. In fact, evidence offered by the defendants to date tends to demonstrate their *good* faith. Each of the officers has stated under oath that he made no false statements in the affidavit submitted in support of the search warrant application. [*See* Deposition of John R. Knott, p. 29; Deposition of Robert A. Denyer, p. 29; Deposition of Robert J. Bechtoldt, pp. 13–14.] Moreover, each has stated that he had no prior knowledge of the Browns, and that he had no "ill will" against them when he sought the warrant to search their home. [*See id.; id.; id.*] Finally, before the Superior Court Judge issued the warrant at issue, the defendants' application and supporting affidavit for the search warrant were reviewed independently by both a superior officer at the police department and an Assistant United States Attorney. *See supra* note 3. Thus, there is no evidence on the record that indicates the investigation team tried "to pull the wool" over anyone's eyes in applying for the search warrant.

In *Malley v. Briggs*, —— U.S. ——, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court discussed the qualified immunity, under 42 U.S.C. § 1983, that police officers enjoy in an *arrest* warrant context. In *Malley,* the Court held that Section 1983 "[d]efendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but *if officers of reasonable competence could*

*disagree on this issue, immunity should be recognized." Id.* 106 S.Ct. at 1096 (emphasis added). This Court finds it appropriate to recognize this standard in a *search* warrant context. In the present case, given the undisputed evidence of the defendants' good faith discussed above, the Court concludes, as a matter of law, that the defendants acted in an "objectively reasonable" manner, as required by *Malley,* in both collecting the pen register information and in seeking the search warrant for the Browns' house. *See id.* 106 S.Ct. at 1098. Summary judgment in favor of these defendants is appropriate upon this ground alone.

Furthermore, in *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held, that before a criminal defendant would be entitled to an evidentiary hearing on a challenge to the conduct of a police officer in seeking a search warrant, he had to overcome "a presumption of validity with respect to the affidavit supporting the search warrant." More specifically, the Court concluded as follows:

> *To mandate an evidentiary hearing,* the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. *There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.* They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. *Allegations of negligence or innocent mistake are insufficient.*

*Id.* (emphasis added). There was nothing "false" about the forty-five phone calls

---

**5.** Because of judicial immunity, the plaintiffs could not have brought a § 1983 action against the judge who issued the warrant even if probable cause did not exist.

**6.** The Court recognizes that, under *Malley v. Briggs,* —— U.S. ——, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986), the act of applying for a warrant is not, per se, reasonably objective.

placed on Thornton's phone to the Browns' number; and, additionally, the plaintiffs have failed to allege "reckless disregard for the truth" on the part of these officers. Moreover, plaintiffs themselves reveal the insufficiency of their Section 1983 case against these officers under the *Franks* standard, by making the following allegation: *"[D]efendants were negligent* in their duties to investigate prior to applying for and obtaining the search warrant." *Supp. Opp.,* at 2. In short, the Browns have met none of the criteria for an evidentiary hearing enunciated in *Franks.* Although *Franks* evaluated challenges to search warrants and their supporting affidavits in a criminal context, this Court sees no reason not to recognize its criteria in a civil context: the police conduct under attack is identical. Therefore, the Court shall not permit the Browns' Section 1983 allegations against the investigation officers to go to trial where, as would be the case here, a criminal defendant would not be entitled to a hearing to challenge the validity of a search warrant's supporting affidavit. Accordingly, Bechtoldt, Denyer, and Knotts are entitled to have summary judgment entered in their favor in regard to the plaintiffs' Section 1983 claim against them.

### B. Pendent Gross Negligence Claim

■ In paragraph No. 28 of the amended complaint, the Browns allege the following: "That the[se] defendants were *grossly negligent* in the investigation of the alleged illegal activities of the plaintiffs and the use of their premises for illegal gambling activities." (Emphasis added.) Although the investigation officers have moved to dismiss this pendent claim under Rules 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure, the Court need not evaluate the merits of this alternative motion with respect to the gross negligence claim against these defendants. Rather, the Court finds it appropriate in this case *not* to exercise its discretion, under *United*

*Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to try the plaintiffs' pendent common law claim. Because Mr. and Mrs. Brown have no Section 1983 claim against the investigation team, and because the plaintiffs will not be prejudiced by dismissal of the local tort action,[7] the Court shall dismiss the pendent claim against these defendants without prejudice. Pendent jurisdiction is a form of subject matter jurisdiction. Accordingly, the Court may dismiss the plaintiffs' gross negligence claim sua sponte. Fed.R.Civ.P. 12(h)(3). *See Kurz v. Michigan,* 548 F.2d 172, 175 (6th Cir.1977) (where federal claim is dismissed, "state law claims are no longer pendent and must be dismissed likewise").

### III. The Search Officers: Keifline, Oicchipinti, and Wilson

*A. 42 U.S.C. § 1983: Fourth Amendment*

*1. Motion to Dismiss*

■ In the amended complaint, Mr. and Mrs. Brown make the following allegations in support of their Fourth Amendment challenge to the actual search of their residence conducted by officers Keifline, Oicchipinti, and Wilson:

19. That the[se] defendants had no reason to believe that there were any items of contraband in the ... [Browns'] residence....

\* \* \* \* \* \*

9. That the[se] defendants, upon gaining entry into the house ... did begin to *wantonly and maliciously* search the ... house by dumping items from shelves, drawers and closets, breaking many of the items in the process.

10. That the defendants entered other rooms in the house by breaking the doors to the various rooms, closets, and leaving them in a condition which required that they be replaced.

---

7. The alleged acts of gross negligence on the part of the investigation officers took place during the Spring of 1985. Thus, the plaintiffs will have until the Spring of 1988 to bring their gross negligence claim in Superior Court under the local statute of limitations. *See* D.C.Code Ann. § 12–301(3) (1981).

11. That the[se] defendants did *ransack* the residence throwing things about and causing items to be lost, destroyed or taken.

\* \* \* \* \* \*

15. That the entire house and its contents were left by the[se] defendants in a total shamble with personal property thrown about, broken, lost or taken.

16. That after completing the alleged search, the[se] defendants left the premises finding nothing that was alleged to be the subject of the search or anything that related to a crime or contraband.

17. That the defendants left the premises without attempting to clean up the mess and the destruction [sic] they had caused.

\* \* \* \* \* \*

20. That the forcible entry into the ... premises by the[se] defendants was in *direct violation of the plaintiffs' constitutional and civil rights pursuant to the Constitution of the United States.*

(Emphasis added). The search team officers have moved to dismiss the plaintiffs' Section 1983 claim against them under Rule 12(b)(6). It is evident from the aforementioned allegations, however, that the Browns have adequately alleged their constitutional deprivation claim against these defendants, so as to survive the motion to dismiss.

In *Daniels v. Williams,* —— U.S. ——, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), the Supreme Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." (Emphasis in original.) However, the Court noted that the case before it afforded *"no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the pro-*

tections of the Due Process Clause." *Id.* 106 S.Ct. at 667 n. 3 (emphasis added).

■ Thus, it appears that the pre-*Daniels* line of cases remains intact with respect to *substantive* due process (*e.g.,* Fourth Amendment) claims under the Fourteenth Amendment and Section 1983.[8] Therefore, where the deprivation of a specific substantive right under the Constitution is alleged to have resulted from the gross negligence or recklessness of a public official, a Section 1983 claim is actionable. *See e.g., Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("deliberate indifference" to prisoner's serious illness or injury sufficient to constitute cruel and unusual punishment under Eighth Amendment); *Jenkins v. Averett,* 424 F.2d 1228, 1231–32 (4th Cir.1970) ("'gross or culpable'" conduct of police officers sufficient to violate right to be free from unreasonable police interference under Fourth Amendment); *Wilson v. Beebe,* 743 F.2d 342, 349 (6th Cir.1984) ("injuries arbitrarily inflicted by law enforcement officers" remediable under § 1983 as deprivations of substantive due process right to be free from use of excessive force by such officers). *But see Parratt v. Taylor,* 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (where § 1983 claim refers to no specific right, privilege, or immunity secured by the Constitution or federal laws other than Due Process Clause of Fourteenth Amendment itself, said claim implicates *procedural* due process only and may not be brought in federal court if adequate state law remedy available for alleged deprivation). In the present case, the plaintiffs have clearly alleged in the complaint that the search of their home by Keifline, Oicchipinti, and Wilson was conducted "wantonly and maliciously," and in direct violation of their "constitutional and civil [*i.e.,* Fourth Amendment] rights." Accordingly, the motion of the search team

**8.** *See Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Fourth Amendment guarantees of United States Constitution made applicable to States through Due Process Clause of Fourteenth Amendment); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (§ 1983 Fourth Amendment claims treated as deprivations of substantive, *vis a vis* procedural, rights under Due Process Clause of Fourteenth Amendment).

defendants to dismiss for failure to state a claim shall be denied.

### 2. Summary Judgment

This second group of policemen have moved, in the alternative, for summary judgment as to the Browns' Section 1983 claim, on the ground that they enjoy qualified immunity for the search they conducted. *Motion to Dismiss*, at 4. The plaintiffs counter this contention by citing the rationale of *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982):

> Qualified immunity is defeated if an *official knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intent to cause a deprivation of constitutional rights or other injury.*

(Emphasis added.) *See Opp.*, at 7.

■ The defendants are correct in asserting that searches conducted pursuant to warrants will rarely require any deep inquiry into the reasonableness therefor; and that a warrant issued by a neutral magistrate will normally suffice to establish that a law enforcement officer has acted in good faith in conducting the search in question. *See Motion to Dismiss*, at 4; *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984); *United States v. Ross*, 456 U.S. 798, 823 n. 32, 102 S.Ct. 2157, 2172 n. 23, 72 L.Ed.2d 572 (1982). Moreover, "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of [qualified] immunity be lost." *Malley*, 106 S.Ct. at 1098 (citing *Leon*, 104 S.Ct. at 3422).

It is not necessary for this Court to evaluate whether the Superior Court Judge was correct or incorrect in determining that probable cause existed against the Browns when the investigation officers applied for the search warrant. *See supra*, p. 1484. For purposes of the plaintiffs' Section 1983

against the *search* team officers, the actual existence or lack of probable cause is irrelevant. In short, given the standard enunciated in *Harlow, Leon, Ross,* and *Malley, supra,* these defendants are entitled to qualified immunity against the plaintiffs' civil rights claim if the search warrant was facially valid and their reliance on it was objectively reasonable.

■ After an evaluation of the actual search warrant relied upon by these officers when they searched the Browns' house, the Court concludes, as a matter of law, that the warrant was facially valid. It reasonably identified both the place to be searched—6545 North Capitol Street, Northeast, Washington, D.C.—and the items to be seized—"number slips, rundown tapes, gambling records, monetary proceeds and other gambling related paraphernalia." In addition, it identified the local criminal statute that possession of such items would have violated, and required that the executing officers give "notice of identity and purpose" to occupants of the place to be searched before commencing the search thereof. Finally, the warrant had to be executed within ten days of its issuance, and it was signed by a Judge of the Superior Court.

Furthermore, because none of the search team officers was involved in the investigation which led to the search in question, [*see* Depositions of Bechtoldt, Denyer, and Knott], and because the Browns have offered no "bad faith" evidence on the part of these defendants, the Court concludes, as a matter of law, that the reliance on the facially valid warrant of the officers who conducted the search of the Browns' residence was reasonable under the circumstances. Accordingly, these defendants are entitled to qualified immunity.

■ Nonetheless, it is a long-standing requirement that officers who conduct searches remain on premises "only *so long as is reasonably necessary*" to conduct a search, and that they "*avoid unnecessary damage to the premises.*" 2 W. LeFave, Search and Seizure, § 4.10 (1978) (emphasis

added). Thus, despite the fact that police officers may have reasonably relied on a facially valid search warrant, where the scope of the search itself is at issue, *"[t]he conduct of police officers in executing a search warrant is always subject to review as to its reasonableness, ... and officers may be held liable under Section 1983 for executing a warrant in an unreasonable manner."* Tarpley v. Greene, 684 F.2d 1, 8–9 (D.C.Cir.1982) (emphasis added) (citations and footnote omitted).[9]

■ On the basis of the record before it, the Court cannot rule, as a matter of law, whether the search conducted by defendants Keifline, Oicchipinti, and Wilson was reasonable or unreasonable under the circumstances. In the complaint, the Browns allege, *inter alia*, as follows:

> 21. That the[se] defendants have [caused] personal property damage to the front entry door, door jamb, wall area around door, locks, door trim, closet doors and jambs, electrical wiring servicing to door bell and front lighting, and general damage to personal property which was ransacked and broken during the alleged search. Further, plaintiffs had items of clothing damaged in the search which are no longer useable, and loss of prepaid movie tickets, and general damage throughout their residence.

In addition, the plaintiffs claim that "the damage done to the real and personal property of the plaintiffs is in excess of $7,000.00." *Opp.*, at 3.

On the other hand, the defendants have argued that the "plaintiffs' insurance company assessed the damage to plaintiffs' property at $1,372.48 and paid plaintiffs $1,247.48." *Motion to Dismiss*, at 2. Moreover, they contend that the Browns "failed to allege specifically that the property damage they suffered was not reasonably necessary to the execution of the search warrant." *Id.* at 6. Further, two of the search team officers have stated, under oath, that the total damage incurred

by the Browns' home during the search consisted solely of the forcing open of both the home's front door and a closet door inside of the residence. [*See* Affidavits of James E. Keifline and Seketa Z. Wilson.]

It is obvious that the reasonableness or unreasonableness of the search team in conducting the search depends upon the resolution of genuine issues of material fact. Thus, although the Court shall enter partial summary judgment in favor of these police officers in regard to both the issues of the facially valid warrant and the officers' reasonable reliance thereon, the Browns' Section 1983 claim against these defendants shall proceed to trial on the sole issue of the scope of the search conducted.

### B. Pendent Gross Negligence Claim

■ A federal district court has discretion under *United Mine Workers, supra*, to exercise pendent jurisdiction over a local claim presented along with a substantial federal claim. *See, e.g., Doe v. Board on Professional Responsibility*, 717 F.2d 1424, 1426 (D.C.Cir.1983); *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 772 (D.C.Cir.1982). However, where plaintiffs have alleged a substantial federal claim under Section 1983, and where, if plaintiffs were able to establish such a claim at trial, they "would have available appropriate remedies for any and all wrongs arising out of the conduct complained of ... and ... [would] be entitled to adequate compensation under that federal claim," dismissal of the local pendent claim is appropriate. *Jenkins v. Carruth*, 583 F.Supp. 613, 614 (E.D.Tenn.1982), *aff'd*, 734 F.2d 14 (6th Cir.1984). *See Garrett v. City of Hamtramck*, 503 F.2d 1236, 1247 (6th Cir.1974) (where constitutional violations of defendants are sufficient to warrant broad remedy, district court should not exercise pendent jurisdiction); *Campbell v. Buckles*, 448 F.Supp. 288, 293 (E.D. Tenn.1977) (same).

The action before the Court is such a case. If the Browns prevail on their Sec-

---

**9.** *See also United States v. Penn*, 647 F.2d 876, 882–83 (9th Cir.) (manner in which search is conducted may have been unreasonable "even if the conduct did not rise to the shocking level of a due process violation"), *cert. denied*, 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980).

tion 1983 claim against the search team officers for the alleged damages to the Browns' property, a jury can adequately compensate the plaintiffs for the actual losses they have sustained. Accordingly, because pendent jurisdiction is a form of subject matter jurisdiction, the Court shall dismiss the gross negligence claim against Keifline, Oicchipinti, and Wilson, sua sponte, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. Moreover, the plaintiffs will not be prejudiced. *See supra* note 6. This approach to the case recognizes judicial economy, and will avoid the possibility of a duplicative recovery for Mr. and Mrs. Brown. *See Brady v. Washington County*, 509 F.Supp. 538, 541 (E.D.Tenn.1980) (where successful § 1983 action would provide plaintiffs with appropriate remedy for all wrongs arising out of conduct complained of, and possibility of jury confusion exists with respect to "separating the state from the federal claim," pendent jurisdiction should not be exercised). Therefore, the plaintiffs' gross negligence claims against these police officers shall be dismissed without prejudice.[10]

## IV. *The District of Columbia*

### A. *42 U.S.C. § 1983: Fourth Amendment*

#### 1. *Motion to Dismiss*

■ The defendant District of Columbia has moved to dismiss the plaintiffs' Section 1983 claims against it on the ground that the plaintiffs "have failed to plead ... that a custom, policy or practice of the District of Columbia ... [has caused] a deprivation of plaintiffs' constitutional rights." *Motion to Dismiss*, at 2. Thus, the District seeks dismissal under Rule 12(b)(6).

Although the plaintiffs make no allegations—factual or conclusory—in their complaint with respect to this "custom or policy" issue, they argue as follows in their opposition to the District's motion:

> [T]he [defendant] police officers were carrying out the mandate of a search warrant *issued under the policy of the District of Columbia* and conducted the search of the plaintiffs' home *according to the custom and practices of the District of Columbia Police Department*, thereby providing a sufficient nexus by which [sic] to hold the District of Columbia liable for the unlawful and unconstitutional conduct of its agents, the defendant police officers.

*Opp.*, at 4–5. Given this Circuit's liberal pleadings policy with respect to civil rights actions, the Court concludes that, by raising these conclusory custom and policy allegations in their opposition, the plaintiffs have, in effect, amended their complaint sufficiently to withstand the District's motion to dismiss.[11]

---

**10.** These defendants argue additionally that, under *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), they are entitled to dismissal of the § 1983 claim because "the Fourteenth Amendment is not violated when a state employee negligently deprives an individual of property provided that the State makes available a meaningful post deprivation remedy." *Motion to Dismiss*, at 7. However, this ruling from *Parratt* applies only to *procedural* due process claims brought under the Fourteenth Amendment alone, not § 1983 claims brought to remedy alleged deprivations of substantive rights under specific provisions of the Constitution such as the Fourth Amendment.

**11.** *See, e.g., Wiggins v. District of Columbia*, 791 F.2d 210, slip op. at 2–3 (D.C.Cir. 1985) (per curiam) (unpublished pursuant to D.C. Cir.R. 13(c) ). The Court takes exception to this policy, in that an opposition to a motion to dismiss is not a "pleading" under Fed.R.Civ.P. 7(a). By adding allegations made in an opposition to those found in the complaint, the Court performs the work of plaintiff's counsel by amending the complaint without requiring said counsel to move to amend. Where under Fed. R.Civ.P. 8(a), a plaintiff fails sufficiently to plead his case, Congress has provided the defendant, in Fed.R.Civ.P. 12(b)(6), with the means by which to defend the action. By amending the complaint sua sponte, the Court robs the defendant of a statutory right to dismissal under Rule 12(b)(6), and thereby ignores the will of Congress. It is questionable practice to require the trial court—*i.e.*, a neutral, detached forum—to do the lawyering for the plaintiff. It must be noted, however, that under D.C.Cir.R. 8(f), "[u]npublished orders, including explanatory memoranda of ... [the] Court [of Appeals], are not to be cited in briefs or memoranda of counsel as precedents." Thus, decisions such as *Wiggins, supra,* are in effect made on a case-by-case, *sub rosa*, basis. The issuance of

### 2. Summary Judgment

■ The District's motion is also, in the alternative, one for summary judgment. This defendant argues not only that the Browns have failed to "plead" a custom or policy case, but also that they "have *failed to ... establish* that a custom, policy or practice of the District of Columbia ..." caused a deprivation of the plaintiffs' constitutional rights. *Motion to Dismiss*, at 2 (emphasis added). The District is correct in this regard, and summary judgment shall be granted as to this defendant on the Section 1983 claim.

The Browns allege conclusorily in their opposition as follows:

> *Plaintiffs have shown* that the District of Columbia is liable for the acts of the defendant police officers because police officers are public servants charged with the duty of enforcing the laws according to the *customs, policies or practices* of the District of Columbia.
>
> \* \* \* \* \* \*
>
> *Plaintiffs have shown* that there exists a municipal policy directing the occurrence of such violation [sic] in that the defendants were following the *policies, practices, and customs* of the District of Columbia *in executing the search warrant* and it is the *policy and practice* of the District to allow its police officers wide discretion in performing their duties.

*Opp.*, at 4–5 (emphasis added). Although allegations such as these entitle the plaintiffs to overcome the District's motion to dismiss, *supra*, the Browns have failed—either in the complaint or in the opposition (including supporting affidavits or exhibits) to "show" any evidence that the District's search warrant procedures constitute a custom or policy that causes civil rights deprivations. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1974) (42 U.S.C. § 1983 not to be used to assert vicarious liability against municipality for constitu-

tional torts of employees under theory of respondeat superior; plaintiff must show custom or policy of deprivations on part of government to hold municipality liable for constitutional violations of employees); *Miller v. Barry*, 698 F.2d 1259, 1261 (mere assertion that police officer was acting within scope of employment "pursuant to the policies of defendant" not specific enough to withstand dismissal).

Moreover, the plaintiffs "hoist themselves with their own petar." *See* W. Shakespeare, *Hamlet*, Act III, Scene iv. In their opposition, the Browns articulate a fundamentally inconsistent argument:

> *If the members of the police department* for the District of Columbia charged with the investigation of, the alleged gambling operation *had conformed to the general policy procedures for investigators* and in fact had investigated whether or not the plaintiffs were involved in the alleged illegal gambling operation, *they would have found that no such illegal activity was involved* . . . .

*Opp.*, at 1–2 (emphasis added). Thus, the plaintiffs admit, albeit inadvertently, that the custom or policy of the District in regard to investigations and search warrants does not cause individuals to be deprived of their constitutional rights.

There is, therefore, no action under Section 1983 against the District. Accordingly, summary judgment shall be entered for this defendant as to the plaintiffs' Fourth Amendment claim.

### B. Respondeat Superior: Gross Negligence

Although the plaintiffs name the District as a defendant in this action, the complaint contains no specific respondeat superior count against the District for the alleged acts of gross negligence of its employees. Nonetheless, the complaint does state that several of the individual defendants were "police officers in and for the District of

unpublished opinions seems a rather unique method of informing the lower court, bar, and

public of the law laid down by the Circuit Court.

Columbia, *acting at all time[s] complained hereof in the scope of their employment." Amended Complaint* ¶ 3 (emphasis added). Under *Monell*, a municipality may be held liable for the common law torts of its employees under the doctrine of respondeat superior. 436 U.S. at 691, 98 S.Ct. at 2036. However, because the Court has dismissed without prejudice the plaintiffs' gross negligence claims against all of the police officers named as defendants in this case, the respondeat claim against the District shall be dismissed without prejudice as well.

## CONCLUSION

In accordance with this opinion, it is by the Court, this 24th day of June, 1986 hereby ORDERED as follows:

(1) Defendants' motion to dismiss the complaint as to defendant Bennafield is GRANTED; and summary judgment in favor of this defendant is entered on both the 42 U.S.C. § 1983 and gross negligence claims against him;

(2) The motion of defendants Bechtoldt, Denyer, and Knott to dismiss the 42 U.S.C. § 1983 claim against them is DENIED;

(3) The alternative motion of defendants Bechtoldt, Denyer, and Knott for summary judgment is GRANTED, and summary judgment is entered in favor of these defendants in regard to plaintiffs' 42 U.S.C. § 1983 claim;

(4) Plaintiffs' gross negligence claim against defendants Bechtoldt, Denyer, and Knott is DISMISSED without prejudice, pursuant to Fed.R.Civ.P. 12(h)(3);

(5) The motion of defendants Keifline, Oicchipinti, Wilson, and the District of Columbia to dismiss the 42 U.S.C. § 1983 claim against them is DENIED;

(6) The alternative motion of defendants Keifline, Oicchipinti, and Wilson for summary judgment in regard to plaintiffs' 42 U.S.C. § 1983 claim against them is DENIED;

(7) Plaintiffs' gross negligence claim against Keifline, Oicchipinti, and Wilson is DISMISSED without prejudice, pursuant to Fed.R.Civ.P. 12(h)(3);

(8) The alternative motion of the District of Columbia for summary judgment is GRANTED, and summary judgment is entered in favor of this defendant in regard to plaintiff's 42 U.S.C. § 1983 claim; and

(9) Plaintiffs' respondeat superior/gross negligence claim against the District of Columbia is DISMISSED without prejudice, pursuant to Fed.R.Civ.P. 12(h)(3).