**Greg TRUCKE, Karen Trucke, Shawn Trucke and Wendy Trucke, Plaintiffs,**

**v.**

**Roger ERLEMEIER, Gary Brouilette, Brady Hanson, James Jensen, Ervin Thies, in their official capacities as members of the School Board of the Maple Valley Community School District; Dennis L. Webner, in his official capacity as Superintendent of the Maple Valley Community School District; and Michael P. Jensen, in his official capacity as Monona County Attorney, Defendants,**

**State of Iowa, Intervenor.**

**No. C 86–4181.**

United States District Court,
N.D. Iowa W.D.

March 4, 1987.

Michael D. Farris, Washington, D.C., Myron Toering, Sioux Center, Iowa, for plaintiffs.

Michael Jensen, Monona Co. Atty., Onawa, Iowa, pro se.

Derrick Franck, Denison, Iowa, for defendants.

Merle Fleming, Iowa Atty. Gen. Office, Des Moines, Iowa, for the State.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on the plaintiffs' motion for a temporary restraining order. A motion to dismiss for want of subject matter jurisdiction has been filed on behalf of the State, which was permitted to intervene under 28 U.S.C. § 2403(b) because the constitutionality of a state statute was drawn into question. Motions to abstain have been filed on behalf of the State and Defendant Erlemeier, Brouilette, Hanson, James Jensen, Thies and Webner (hereinafter "the School Board defendants"). Defendant Michael Jensen has also filed a motion to dismiss for failure to state a claim upon which relief may be granted. A hearing was held and three sets of briefs have been submitted. Although the plaintiffs' motion was labeled as a motion for a temporary restraining order, the Court has followed procedures for granting a preliminary injunction because it was clear that the plaintiffs sought relief which would last longer than ten days. After careful consideration of the many issues involved, the Court denies each motion to dismiss, denies in part and grants in part the motions to abstain, and denies the plaintiffs' motion for a temporary restraining order or preliminary injunction.

## UNDISPUTED FACTS

Greg and Karen Trucke are the parents of two school-age children, Shawn and Wendy. According to their complaint, Mr. and Mrs. Trucke (hereinafter referred to simply as "the Truckes") are teaching their children at home. On October 14, 1985, the Truckes were prosecuted[1] for violating Iowa's compulsory attendance law, which states in relevant part:

A person having control of a child over seven and under sixteen years of age, in proper physical and mental condition to attend school, shall cause the child to attend some public school for at least one hundred twenty days in each school year, commencing with the first week of school after the first day of September, unless the board of school directors establishes a later date, which date shall not be later than the first Monday in December.

The board may, by resolution, require attendance for the entire time when the schools are in session in any school year.

In lieu of such attendance such child may attend upon equivalent instruction by a certified teacher elsewhere.

Iowa Code § 299.1 (1985). The Iowa District Court for Monona County found that at the beginning of the 1985–86 school year, Greg and Karen Trucke provided most of the instruction in the home school, but neither was a certified teacher. The Truckes stated to that court that the children also received instruction on one day each week for three or four hours from Susan Goodenow, who they said was a certified teacher. Because the Truckes failed to have their children attend a school which provides instruction by a certified teacher for at least 120 days during the school year, the District Court affirmed the magistrate's ruling that the Truckes violated 299.1. *State v. Trucke*, Nos. 7–189 through 7–192 (March 3, 1986). Their appeal of that decision is presently awaiting oral argument before the Iowa Supreme Court.

On September 11, 1986, the Secretary of the Maple Valley Community School Board,

---

1. A violation of § 299.1 is a simple misdemeanor. Under Iowa Rule of Criminal Procedure 38, upon the filing of a simple misdemeanor complaint, a magistrate or district court clerk or clerk's deputy may issue a warrant of arrest or may issue a citation instead of a warrant for arrest. That citation may be served in the same manner as an original notice in a civil action. Iowa Code § 804.1 (1985). According to the Iowa state district court's opinion in *State v. Trucke, infra,* a citation was used to prosecute the Truckes in 1985.

which is obligated by law to take action if truancy is suspected,[2] wrote to the Truckes to request information from them concerning their children's education during the current school year. Enclosed with the letter and information forms were the State Department of Public Instruction's August 15, 1985 policy on equivalent instruction and regulations promulgated December 12, 1985 by the Board of Public Instruction to "give guidance to parents, guardians, local school boards and teachers providing private instruction outside of the traditional school setting with respect to equivalent instruction for children of compulsory attendance age." Iowa Administrative Code 671 Ch. 63.1(299) (1986) (Exhibit C to Affidavit of Dennis Webner).

On October 8, 1986, after the Truckes wrote back that they would not return the forms, the School Board passed the following resolution:

> Based on the fact that Greg and Karen Trucke refused to supply any information concerning the home schooling of the children, Shawn and Wendy, the Board has cause to believe that Shawn and Wendy Trucke may not be receiving equivalent instruction by a certified teacher as required by Chapter 299 of the Code of Iowa and the regulations of the Department of Education. The Superintendent is directed to refer the matter to the County Attorney for his opinion and determination of appropriate action in this matter.

(Exhibit A).

On October 14, 1986, the Trucke family initiated this action in this court seeking damages, declaratory judgments, an injunction and attorney's fees. The claim is predicated on 42 U.S.C. § 1983, and alleges that the Truckes' past prosecution and any future prosecution would violate their rights under each clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. On October 20, the plaintiffs filed a motion

for a "temporary restraining order prohibiting the defendants herein from taking any new action to enforce the provisions of Iowa Code § 299.1 or any related statutes against the plaintiffs in a criminal case or otherwise." They did not seek to restrain proceedings on the case pending before the Iowa Supreme Court. Moreover, they did not seek a TRO on First Amendment grounds; instead, they have argued that § 299.1 is unenforceable because the terms "equivalent instruction" have been declared unconstitutionally vague in *Fellowship Baptist Church v. Benton*, 620 F.Supp. 308 (S.D.Iowa 1985), and that as a consequence, § 299.1's entire compulsory education requirement, as well as new administrative rules interpreting the vague terms, are unenforceable. The plaintiffs also argue that the enforcement scheme set out in the new regulations is unconstitutional because it vests responsibility for determining whether the Truckes' education is "equivalent" in the local School Board, which they believe cannot be impartial because its state funding varies by the number of pupils in the public school system.[3]

### PRIOR LITIGATION CONCERNING § 299.1

The meaning and constitutionality of § 299.1's last sentence have already been the subjects of three major decisions. In *State v. Moorhead*, 308 N.W.2d 60 (Iowa 1981), the Iowa Supreme Court rejected a vagueness challenge to both the certified teacher and equivalent instruction requirements. In *Johnson v. Charles City Community Schools Board of Education*, 368 N.W.2d 74 (Iowa 1985), the same court rejected each part of a broader attack on 299.1. It specifically reaffirmed its statement in *Moorhead* that equivalent instruction means "instruction which is equal in kind and amount to that provided in public schools," *Moorhead* at 64, but added that the *Moorhead* decision "did not suggest that private religious schools can be made

---

2. Iowa Code § 299.14 (1985).

3. Rule 670—63.4 (299) states that "the district board of education shall annually determine whether each resident child of compulsory school who was not enrolled in the public

schools is receiving equivalent instruction by a certified teacher. The board may seek proof of satisfactory progress by requiring documentation of course work or test results, or by any other reasonable method."

to submit to the sort of state regulation condemned in [*State v. Whisner,* 47 Ohio St.2d 181, 351 N.E.2d 750 (1976) ]." *Johnson,* 368 N.W.2d at 79.

In *Fellowship Baptist Church v. Benton,* 620 F.Supp. 308 (S.D.Iowa 1985), the United States District Court for the Southern District of Iowa, Judge William Stuart presiding, rejected a nearly identical request for relief from two churches which operated schools as part of their educational ministry. Although the court denied the plaintiff's request for declaratory and injunctive relief in full, it held that "the term equivalent instruction is unconstitutionally vague under the Due Process Clause ... and may not be used as a compulsory education requirement without further definition." *Id.* at 318. Like the Iowa Supreme Court in *Moorhead* and *Johnson,* Judge Stuart held that 299.1's certified teacher requirement was constitutional.

Administrative rules designed to interpret the term "equivalent instruction" became effective on February 6, 1986, although the rule-making process began in July 1985, prior to the *Fellowship Baptist* decision. (Brief of Intervenor State of Iowa at 4). Under Iowa's Constitution, either the governor or the legislature could have vetoed the rules prior to their effective date. Iowa Const. Art. III, § 40.

## DISCUSSION

■ The relief which the plaintiffs seek is perhaps the most difficult kind to obtain in a federal court—an order restraining the enforcement of a state law on the basis of facial unconstitutionality. The plaintiffs must overcome three hurdles before this Court can reach the heart of this claim. Their claim must present a "case or controversy" within the Article III jurisdiction of the federal courts, *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed.

246 (1911); the Court must find that it should not abstain in order to avoid a "premature federal decision of a substantial constitutional issue ...", *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and the plaintiffs must satisfy the traditional requirements of equitable relief, including the requirement that a great, immediate, and irreparable injury will result if no TRO or injunction is granted. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970).

### I. Does an Article III "Case or Controversy" Exist?

Federal courts cannot give advisory opinions or resolve abstract disputes without overstepping boundaries placed on the judiciary by the Constitution's framers. *Muskrat v. United States,* 219 U.S. at 358–59, 31 S.Ct. at 254. Furthermore:

> The irreplaceable value of the [judicial] power articulated by Chief Justice Marshall lies in the protection it has afforded the constitutional rights and liberties of individual citizens against oppressive or discriminatory government action. It is this role, not some amorphous general supervision over the operations of government, that has maintained public esteem for the federal courts....

*United States v. Richardson,* 418 U.S. 166, 192, 94 S.Ct. 2940, 2954, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). For these reasons, the Court may not pass judgment upon the constitutionality of § 299.1 unless that judgment is needed to protect these plaintiffs from an imminent injury or to remedy a past injury. If the threat of their prosecution or any other injury is merely speculative, their claim for protection is not ripe.[4]

Parties in this case have taken extreme positions on this question. The State ar-

---

**4.** The requirement that the threat of any future injury must be real and immediate rather than theoretical thus provides the greatest obstacle to those who raise substantive challenges to state and federal criminal laws in federal court. In most cases, the threat of an injury such as prosecution becomes ripe only when the prosecution begins, leaving no time for a court to truly prevent the harm. *See, e.g., Doe v. Duling,* 782 F.2d 1202 (4th Cir.1986) ("speculative"

threat of prosecution under Virginia fornication and cohabitation statutes creates no case or controversy). *But see* H. Fink & M. Tushnet, *Federal Jurisdiction* 638 (1984) ("But in the real conditions of protest activities in the 1980's, pre-activity negotiations with municipal officials will probably provide enough information to allow a court to find a sufficient threat, if indeed there is one, to satisfy the ripeness requirement.").

gues that the plaintiffs' prosecution last year cannot give them standing to object to future prosecutions, thus implying that the many facts suggesting that another prosecution will occur cannot ripen the plaintiffs' claim. The plaintiffs respond that this "niggardly view of federal jurisdiction" is wrong because it would create a catch–22 in which claims ripen only when an injunction would be barred under the Anti-Injunction Act.[5]

■ The proper standard lies well between these positions. While a past prosecution of the plaintiffs under the same law does not always create standing, it is a relevant indication of the State's willingness to prosecute and the plaintiffs' willingness to risk prosecution. *See Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983); *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). The Truckes have already been prosecuted under 299.1 for home schooling during the previous school year. For this school year, the Maple Valley School Board has resolved that it has "cause to believe that Shawn and Wendy Trucke may not be receiving equivalent instruction by a certified teacher" and has "referred the matter to the County Attorney for his opinion and determination of appropriate action in the matter." (Exhibit A). In his brief, County Attorney Jensen states that "the prospect of further state court action in a criminal case is very real." (Resistance to Motion for TRO by Jensen at 2).

■ The defendants nevertheless contend that the Truckes' failure to report to the School Board about their children's schooling prevents the County Attorney from obtaining information about the Truckes' eligibility for the private education exemption in 299.1, thereby reducing the immediacy of their prosecution for a violation of 299.1. Even when a prosecutor cannot promise that a prosecution will occur, a claim of protection from prosecution can still be ripe. For example, in *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922 (5th Cir.1983), *aff'd summarily*, 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984), the local prosecutor was as noncommital about prosecuting the plaintiff as County Attorney Jensen is in this case. However, the Fifth Circuit found that the threat of prosecution was sufficiently real and immediate because the record showed that the plaintiff had or desired to violate the statute, and a citizen had asked the county attorney what he could do about alleged past violations of the statute by the plaintiff.

■ Moreover, the County Attorney does not bear the burden of showing that the Truckes are not providing equivalent instruction by a certified teacher; in *Moorhead*, the Iowa Supreme Court said the exemption creates a defense, not an additional element of the offense of truancy. 308 N.W.2d at 63. Thus, their refusal to report such information does not prevent the County Attorney from proving his case against them for violating 299.1. While the most likely basis for a future prosecution may be the plaintiffs' alleged failure to obey the reporting requirement of 299.4, the Court believes it is unlikely the County Attorney would prosecute the plaintiffs now for violating 299.4 and later for violating 299.1, rather than bringing a single prosecution for both types of violations. It therefore finds that the threat of prosecution under both 299.4 and 299.1 is sufficiently real and immediate to ripen the plaintiffs' claims. The State's motion to dismiss for want of subject matter jurisdiction is therefore denied.

## II. Is *Pullman* Abstention Warranted?

■ In *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85

---

5. The plaintiffs erroneously presume that the Anti-Injunction Act, 28 U.S.C. § 2283, governs their claims. In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the court held that an exception to the Act exists for § 1983 claims. It is true that the ripeness requirement and the irreparable injury requirement often combine to foreclose federal injunc-tive relief. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). It does not follow, however, that whenever that result occurs, one or both of the requirements must have been improperly applied. It merely indicates that it is frequently unnecessary for a federal court to enjoin the enforcement of state law.

L.Ed. 971 (1941), the Supreme Court enunciated a judge-made doctrine designed to reduce conflict between state and federal courts and prevent unnecessary judgments about the constitutionality of state laws and state actions. Under the doctrine of *Pullman* abstention, courts should abstain from reaching a substantial constitutional issue touching a sensitive area of social policy when a state court interpretation of unclear state law could make it unnecessary to reach the constitutional issue. The Court finds that it cannot abstain to avoid considering the constitutionality of § 299.1 itself, but will abstain from considering the constitutionality of a regulation controlling how 299.1 will be enforced.[6]

■ In every *Pullman* abstention case, the court must determine whether the parties have raised an unclear issue of state law which could be addressed by the state supreme court in a way which makes consideration of a federal constitutional issue unnecessary. If no such issue exists, abstention would be improper.

Two issues raised by the parties are unclear issues of Iowa law. The first issue is the meaning of 299.1 itself; by arguing that the terms of this section are unconstitutionally vague, the plaintiffs necessary imply that its meaning is unclear for abstention purposes. *Pullman* abstention is commonly used to permit state courts to clarify vague laws and narrowly construe overbroad laws so as to leave the federal plaintiff's conduct outside the scope of prohibition. *Harrison v. NAACP*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). However, because the delay resulting from abstention sometimes outweighs the insight to be gained from it, federal courts

need not abstain if the possibility of a construction which would exculpate the federal plaintiff is not "substantial and immediate." *Steffel v. Thompson*, 415 U.S. 452, 475 n. 22, 94 S.Ct. 1209, 1224 n. 22, 39 L.Ed.2d 505 (1974); *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).

The Court must therefore weigh the possibility that the Iowa Supreme Court would construe 299.1 so narrowly that the Truckes would satisfy it, presumably by qualifying for the exception for equivalent instruction by a certified teacher. The Iowa Supreme Court has already construed the exception to require instruction which is equal in kind and amount to that provided in a public school, *Moorhead* at 64, and held in *Johnson* that "the legislature was specific in limiting the equivalent instruction allowable under 299.1 to that furnished by a certified teacher." 368 N.W.2d at 80. The *Johnson* court also suggested in dicta that the terms would never authorize the degree of excessive public control of private education which made an Ohio statute unconstitutional, *Johnson* at 79. Yet that concern should only affect the Court's willingness to demand an education by certified teachers which is equivalent in kind to public schools, and has little to do with the requirement of education equivalent in amount. The Truckes have conceded that their children are not being educated by a certified teacher on a full-time basis. (Plaintiffs' Reply Brief at 7). Thus, the Iowa Supreme Court would have to retreat significantly from *Moorhead* in order to place the plaintiffs' conduct outside of 299.-1. Because the Court has no reason to find that the possibility of this retreat is substantial and immediate, the vagueness of 299.1 does not warrant abstention.[7]

6. Because an essential requirement for abstention on the vagueness question has not been satisfied, the Court need not decide whether another requirement—that abstention not unduly injure the constitutional rights at stake— also cannot be satisfied. *See Baggett v. Bullitt*, 377 U.S. 360, 378, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964).

7. The second issue of unclear Iowa law involves Article III, § 29, of the Iowa Constitution. In their Supplemental Brief, the plaintiffs argue that a section of the 1953 law which modified

299.1 is void because it violates a section of the Iowa Constitution requiring all bills to involve one subject and all sections of the bill to relate to the bill's title. Iowa Const. Art. III, § 29. The State argues that the plaintiffs' insertion of this issue requires the Court to abstain from reaching the federal issues. However, it is not likely that the Iowa Supreme Court's resolution of this issue would affect this Court's need to address federal questions raised by the plaintiffs' motion for a TRO. If the Iowa court upheld the 1953 amendment, nothing would change. If the court agreed with the plaintiffs

The State asserts that the validity of the rules promulgated in order to clarify the meaning of "equivalent instruction" is a question of state law. However, the plaintiffs have not questioned the basic delegation of quasi-legislative authority to the State's Department of Public Instruction which was used to promulgate these rules; *see* Iowa Code § 257.10(12) (1985). Instead, they have argued that the State could not restore the constitutionality of the terms "equivalent instruction" through regulations because those terms lost the force of law when Judge Stuart found them to be unconstitutional in *Fellowship Baptist.* Each part of the plaintiffs' argument—their premise concerning the fatal effect of a finding of unconstitutionality, and their conclusion that this deprived the regulations of any curative effect—should be considered a question of *federal* law. The premise involves the meaning of a court's conclusion that a law is unconstitutional, which is necessarily a matter of federal law. Furthermore, because their cause of action is § 1983, the plaintiffs' ultimate conclusion must be that the enforcement of 299.1 today would deprive them of their constitutional rights. The validity of that conclusion must also be a question of federal law. Therefore, the last remaining ground to abstain from considering whether 299.1 is unconstitutionally vague is invalid.

However, the Court will abstain from deciding another question—the constitutionality of the state regulation vesting local school boards with responsibility to "determine" the equivalence of private instruction. Iowa Admin.Code § 670-63.-4(299) (1986). Whether this regulation raises a genuine constitutional question depends upon on how it is interpreted when enforced; if the local school board's determination of nonequivalence were given no special deference by Iowa courts before convicting the plaintiffs for violating 299.1, the decision of whether to deprive the plaintiffs of liberty or property would be made entirely by an impartial decision-maker, and whatever pecuniary interest a school board has in convicting the plaintiffs would be irrelevant. The Court therefore does not reach the question of whether deference to the School Board would be unconstitutional. It only decides that the possibility that Iowa courts would not permit any deference is substantial enough to warrant abstention.

### III. Are the Plaintiffs Entitled to a Temporary Restraining Order?

To receive a temporary restraining order or preliminary injunction, the plaintiffs must show:

1) A threat of irreparable injury to them;

2) A probability of success on the merits;

3) The harm to the parties opposing the injury does not outweigh the threatened harm to the movant; and

4) The public interest would be served. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (en banc).

### A. Irreparable Harm.

The plaintiffs must convince the Court that the harm which would result if no order or injunction were entered would be great, immediate, and *irreparable. Fenner v. Boykin,* 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926). Even if the likelihood that harm will occur is great enough to ripen the plaintiffs' claim under Article III of the Constitution, they are not entitled to a restraining order or injunction if that harm is otherwise remediable at law.

The only allegation of irreparable harm in any of the documents filed by the plaintiffs is the assertion in their first brief that "the plaintiffs will be greatly harmed if they are arrested and prosecuted for criminal violations under § 299.1." (Plaintiffs' Memorandum of Authorities at 13). The Court recognizes that the plaintiffs might

---

and invalidated the 1953 amendment, the plaintiffs would continue to challenge the constitutionality of the "equivalent instruction" requirement, which predated the 1953 amendment, and might also consider the term "competent teacher" from the old law to be unconstitutionally vague as well. For this reason, the plaintiffs' insertion of this new issue does not warrant *Pullman* abstention. *City of Chicago v. Atchison, Topeka and Santa Fe Railway Co.,* 357 U.S. 77, 84, 78 S.Ct. 1063, 1067, 2 L.Ed.2d 1174 (1958).

be prosecuted under 299.1 without ever being arrested. *See* Note 1, *supra.* They have produced no evidence that they might be arrested rather than merely cited.

■ As the defendants have correctly noted, where a single prosecution is the only future injury which a plaintiff risks, constitutional defenses to that prosecution in the state criminal proceeding constitute adequate remedies at law. *O'Shea v. Littleton,* 414 U.S. 488, 499–504, 94 S.Ct. 669, 677–680, 38 L.Ed.2d 674 (1974); *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971); *Douglas v. City of Jeannette,* 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943); *Munson v. Gilliam,* 543 F.2d 48 (8th Cir.1976). *But see Evers v. Dwyer,* 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958).[8]

■ Other plaintiffs in other actions have received relief in similar settings by moving for a declaratory judgment, which is available under 28 U.S.C. § 2201 without proof of irreparable injury, *Steffel v. Thompson,* 415 U.S. at 466, 94 S.Ct. at 1219;[9] or by demonstrating the risk of some kind of harm beyond the prosecution itself and the accompanying cost, anxiety and inconvenience of providing a defense. Thus, the plaintiffs might have demonstrated irreparable harm by showing that they would be required to forego constitutionally protected activity in order to avoid arrest, *Steffel,* 415 U.S. at 463 n. 12, 94 S.Ct. at 1218 n. 12, a continuing threat to their ability to perform the ordinary tasks of life, *Wooley,* 430 U.S. at 712, 97 S.Ct. at 1434, a threat of irreparable financial loss or bankruptcy, *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975); *Ex Parte Young,* 209

U.S. 123, 145–7, 28 S.Ct. 441, 448, 52 L.Ed. 714 (1908); or some other kind of specialized harm which is "considered irreparable in the special legal sense of that term." *Younger,* 401 U.S. at 46, 91 S.Ct. at 751.

The Court suspects that conduct which the plaintiffs would have to forego in order to avoid prosecution is conduct which they believe is protected by the First Amendment. However, in an attempt to avoid the effect of two Supreme Court opinions on another issue, they explain that they "do not make any claim of overbreadth as to the equivalent instruction provision." (Plaintiffs' Supplemental Memorandum of Authorities at 11). In light of this statement, and their failure to provide any evidence of a risk of truly irreparable harm, the Court cannot find that the first requirement for a TRO or a preliminary injunction has been satisfied, and it therefore would be reversible error to grant such relief. *Dataphase,* 640 F.2d at 114 n. 9.

The Court could deny the plaintiffs' motion while granting them leave to amend it in order to show that an irreparable injury would result. However, judicial economy and fairness require the Court to first determine whether it would be futile for them to try again. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Therefore, the Court will assume *arguendo* that the plaintiffs could show irreparable harm, and will consider whether there is a probability of success on the merits.

**B. Probability of Success on the Merits.**

■ The only federal question for the Court to consider at this time is whether

---

**8.** Had the plaintiffs sought to enjoin a *pending* prosecution, *Younger* would bar injunctive and declaratory relief even if harm greater than the prosecution itself would result, as long as the prosecution was not brought in bad faith or to harass, or unless other extraordinary circumstances were present. *Younger,* 401 U.S. at 53, 91 S.Ct. at 755. Assuming for the sake of argument that the bad faith and harassment exceptions are also available prior to prosecution, the fact that the plaintiffs have already been prosecuted or may be prosecuted more than once in the future does not itself qualify them for those exceptions. *Hicks v. Miranda,* 422 U.S. 332, 351, 95 S.Ct. 2281, 2293, 45 L.Ed.2d 223 (1975);

*Grandco Corp. v. Rochford,* 536 F.2d 197, 204 (7th Cir.1976).

**9.** The plaintiffs' briefs occasionally refer to the "declaratory judgment" which they seek. The Court recognizes that the prayer for relief in the plaintiffs' complaint contains requests for two declaratory judgments. However, the only substantive motion they have filed so far is a motion for a TRO. Because a motion for a declaratory judgment requires the Court to fully reach the merits, it would not be fair to either party to treat their motion for a TRO as a motion for declaratory judgment.

Judge Stuart's statement in *Fellowship Baptist* that the terms "equivalent instruction" were unconstitutionally vague automatically deprived § 299.1 of its force as law, so as to deprive the State Board of Public Instruction of authority to cure this defect by promulgating regulations defining the terms which Judge Stuart found unconstitutionally vague.

The plaintiffs' source of authority for the key premise of their theory is a statement by the U.S. Supreme Court in *Norton v. Shelby County*, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886):

> An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

*Id.* at 442, 6 S.Ct. at 1125. *Norton* and the two other cases the plaintiffs cite for this premise did not involve efforts by a state agency to cure a vague statute or any other set of facts present in this case. *See also Security Savings Bank of Valley Junction v. Connell*, 198 Iowa 564; 200 N.W. 8 (1924); *Chicot County Drainage District v. Baxter State Bank*, 103 F.2d 847 (8th Cir.1939). Furthermore, the *Chicot County* decision was reversed by the U.S. Supreme Court for reasons which suggest that if *Norton* and its progeny were decided today, the outcome would be different. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940). In fact, Chief Justice Burger's plurality opinion in *Lemon v. Kurtzman*, 411 U.S. 192, 199, 93 S.Ct. 1463, 1468, 36 L.Ed.2d 151 (1973), explains the court's "abandonment" of "the logic of *Norton*."[10]

In response to the Court's request that each party explain how this abandonment affects the precedential value of *Norton* and its progeny, the plaintiffs attempt to distinguish this case from the cases abandoning *Norton*. In doing so, they invoke the same factual differences between this case and the abandoning cases which make *Norton* distinguishable from this case. This response merely re-emphasizes the marginal relevance of the cases they cite to support their theory.

Without citing additional cases, the plaintiffs assert that "the principle we rely on—laws which are declared unconstitutional are void, at least for future purposes—is woven so tightly into our constitutional fabric that its existence has rarely been questioned," and claim that they "cannot find a single case where anyone has ever suggested that a statute which has been declared unconstitutional has any life for the time period subsequent to the declaration of invalidity." (Plaintiffs' Supplemental Memorandum of Authorities at 5–6).[11]

The plaintiffs have overlooked several very significant cases. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Supreme Court enjoined the bad-faith prosecution of a civil rights worker under a vague and overbroad anti-communist statute. However, the court also held that the state could resume prosecutions under the facially unconstitutional statute after obtaining a declaratory judgment from a state court's narrowing and clarifying the scope of the law. *Id.* at 491, 85 S.Ct. at 1123.

In *Fellowship Baptist*, Judge Stuart expressly refused to enjoin the enforcement of 299.1; he merely found that "the term equivalent instruction is unconstitutionally vague ... and may not be used as a compulsory education requirement without further definition." *Id.* at 318. Thus, the following passage in *Steffel v. Thompson* is particularly relevant:

> If a declaration of partial unconstitutionality is affirmed by this court, the impli-

---

10. *See also* L. Tribe, *American Constitutional Law* 24–25 (1978).

11. The plaintiffs also assert that the Supreme Court has never refused to give prospective application to a decree of unconstitutionality. However, this is not a dispute about the prospective application of Judge Stuart's decision; the defendants and the State can hardly dispute that the *Fellowship Baptist* decision should be given prospective precedential effect in *factually similar settings.* To prevail, however, the plaintiffs must convince the Court to disregard one critical factual difference between *Fellowship Baptist* and this case—the State's recent promulgation of regulations clarifying 299.1.

cation is that this court will overturn particular applications of the statute, but that if the statute is narrowly construed by the state courts it will not be incapable of constitutional applications. Accordingly the declaration does not necessarily bar prosecutions under the statute, as a broad injunction would.

*Steffel*, 415 U.S. at 470, 94 S.Ct. at 1221. Furthermore, in *Doran v. Salem Inn*, the Supreme Court held that "neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the state is free to prosecute others who may violate the statute." 422 U.S. at 931, 95 S.Ct. at 2567. The reasoning of these cases is fundamentally at odds with the plaintiffs' essential premise that terms lose their effect as law upon a court's ruling that they are unconstitutional.

These cases also show that the Iowa Supreme Court could have cured the vagueness of § 299.1 by formulating a clarifying interpretation. Thus, to adopt the plaintiffs' theory, the Court must withhold a prerogative to clarify Iowa law from a duly authorized state agency even though it could not withhold it from the state court. The vagueness doctrine cannot justify such a distinction. The two effects of vagueness which Fourteenth Amendment protection is designed to prevent—inadequate notice and excessive discretion in enforcement[12]—are no more likely to occur if the State Board of Public Instruction successfully clarifies the statute instead of the Iowa Supreme Court.

The U.S. Supreme Court has held that "in evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or *enforcement agency* has proffered." *Kolender v. Lawson*, 461 U.S. 352, 355, 103 S.Ct. 1855, 1857, 75 L.Ed.2d 903

(1983); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982). For this reason, Judge Stuart could have ruled the terms "equivalent instruction" were constitutional if the Board's clarifying regulations had become effective prior to his decision. To conclude that a different sequence of events in this case prevents the state agency but not the Iowa Supreme Court from promulgating clarifying rules would exaggerate the role of judges in the law-making process while trivializing the role of quasi-legislative agencies like the State Board of Public Instruction.

■■■ As a matter of political theory, it might be better to make the Iowa legislature clarify the meaning of "equivalent instruction."[13] As a matter of constitutional law, however, the Due Process Clause of the Fourteenth Amendment does not authorize or require this Court to make that choice for the State. For these reasons, the Court finds that the plaintiffs are not sufficiently likely to show that the constitutionality of 299.1 could not be restored by regulations promulgated by the State Board of Public Instruction. Therefore, the Court need not consider the further issue of whether the enforcement of an uninterpreted version of 299.1 would constitute a deprivation of the Truckes' constitutional rights. *See Parker v. Levy*, 417 U.S. 733, 754–56, 94 S.Ct. 2547, 2560–61, 41 L.Ed.2d 439 (1974). *But see Kolender v. Lawson*, 461 U.S. at 358–361, 103 S.Ct. at 1858–1860.

The plaintiffs have not argued that the new regulations are also vague. Thus, the Court has no basis to conclude that the plaintiffs are sufficiently likely to prevail on the merits of the only remaining federal claim.[14]

---

**12.** *Grayned v. City of Rockford*, 408 U.S. 104, 108–9, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

**13.** For the provocative view that courts should "remand" unclear laws involving the environment to Congress, see J. Sax, *Defending the Environment* 175–192 (1971).

**14.** The plaintiffs have asked the court to enjoin enforcement of the reporting requirements of 299.4 as violative of their Fifth Amendment rights against self-incrimination. However, they have not briefed this issue, and the Court cannot assume their rightful burden of demonstrating their likelihood of success on this question. For that reason, the request to enjoin the enforcement of 299.4 is denied.

■ The Court must now decide whether to consider the plaintiffs' post-hearing challenge to the legality of the 1953 amendment to 299.1 which required equivalent instruction by a certified teacher instead of a competent teacher. Because this claim was not stated in any motion or complaint, but was merely raised in the plaintiffs' third brief, the question before the Court is whether leave to amend would be futile. Because the Court finds that it lacks pendent jurisdiction to consider such a claim,[15] it would be futile to grant leave to amend.

This claim rests entirely upon the following section of the Iowa Constitution:

> Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

Iowa Const., Art. III, § 29. The plaintiffs contend that the subject of teacher certification was not "properly connected" with the establishment of the State Board of Public Instruction or any other part of the same bill, and that the subject of teacher certification was inadequately expressed in the title of the Act. *See* 1953 Iowa Acts Ch. 114.

"When substantial federal questions are presented in the district court, that court may in its discretion exercise pendent jurisdiction over state claims arising out of the same nucleus of operative fact. Considerations of economy, convenience, and fairness favor the exercise of jurisdiction; on the other hand, principles of comity and the desirability of a 'surerfooted reading of applicable law' support the determination of state claims in state court." *Financial General Bankshares, Inc. v. Metzger*, 680 F.2d 768, 769 (D.C.Cir.1982) (footnote omitted). In weighing these factors, the Court recognizes that pendent jurisdiction of federal courts to consider state law claims in non-diversity cases is a matter of discretion, not of plaintiffs' right. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

"When it exercises its discretion, a federal court should be reluctant to retain pendent jurisdiction over a question for which state jurisprudence provides inadequate guidance." *Metzger* at 776. "Federal courts are not the authorized expositors of state law; there is no mechanism by which their errors in such matters can be corrected on appeal by state courts." *Metzger, id.* (*quoting* Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 Law and Contemp.Prob. 216, 232 (1948)).

In this case, the plaintiffs essentially argue that the Iowa legislature changed a law regarding apples improperly by sticking the change in a bill about oranges. The Court has no difficulty telling apples from oranges. However, Iowa case law provides inadequate guidance concerning whether such a bill should be treated as an improper bill about the two subjects of apples and oranges or a proper bill about the single subject of fruit. *Compare Long v. Board of Supervisors*, 258 Iowa 1278, 1282–85, 142 N.W.2d 378, 381–382 (1966) (topics which are part of "one general idea" constitute one subject), *with National Benefit Accident Ass'n v. Murphy*, 222 Iowa 98, 269 N.W. 15, 19 (1936) (suggesting that a bill's subject is no broader than the topics which a reasonable person would infer from its title). For this reason the risk of error is unusually strong. Moreover, the gravity of error might be steep; if this Court were to read this section of the Iowa Constitution too broadly, it could needlessly draw the constitutionality of a substantial number of other Iowa statutes into question.

---

**15.** The Anti-Injunction Act, 28 U.S.C. § 2283 (1982), would not bar this injunction because an injunction against the *institution* of state proceedings is not considered "an injunction to stay proceedings", which would be barred. *Dombrowski*, 380 U.S. at 484 n. 2, 85 S.Ct. at 1119 n. 4. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), does not bar the claim because the named defendants are not protected by the Eleventh Amendment. *Lincoln County v. Luning*, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). However, any such injunction could not "run" against the State. *Pennhurst*, 465 U.S. at 123 n. 34, 104 S.Ct. at 920 n. 34.

Furthermore, judicial economy would not be significantly served by retaining jurisdiction. The plaintiffs ask this Court to enjoin the very process of prosecution which would permit them to bring the question before the Iowa courts. If the defendants choose not to prosecute, Iowa's own declaratory judgment procedure may provide the Truckes with a remedy which they can initiate. Iowa R.Civ.P. 261 (1986).

Furthermore, if the Court were to retain jurisdiction, it might be required to abstain from addressing this state law question under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Louisiana Power and Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Unlike *Pullman* abstention, *Burford* abstention may be necessary even when no federal question may thereby be avoided. It is proper when a difficult state law question is presented and federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Cf. Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Because of the risk and gravity of error as described above, this may be just such a case. Thus, the plaintiffs will not be granted leave to amend to add this state law claim because it would be futile to do so.[16]

IT IS THEREFORE ORDERED that the Intervenor State of Iowa's motion to dismiss for lack of subject matter jurisdiction is denied.

IT IS FURTHER ORDERED that the motions to abstain on the basis of the vagueness of § 299.1 are denied. However, the Court will abstain from deciding the question of whether Rule 670–63.4 (299) is unconstitutional.

IT IS FURTHER ORDERED that the plaintiffs' motion for a temporary restraining order or preliminary injunction is denied in full.

IT IS FURTHER ORDERED that the plaintiffs are not granted leave to amend their motion to show a risk of irreparable harm or to add to a claim under Article III, § 29 of the Iowa Constitution because it would be futile to do so.

IT IS FURTHER ORDERED that Defendant Michael Jensen's motion to dismiss is denied.

IT IS FURTHER ORDERED that the Magistrate shall promptly set deadlines for discovery and the filing of additional pleadings and that, thereafter, this case shall be promptly heard on the merits of the other relief sought by the plaintiffs.

---

16. The only remaining motion to consider is Defendant Michael Jensen's motion to dismiss all claims against him on the basis of prosecutorial immunity. The plaintiffs have named County Attorney Jensen because prosecutors are a natural target of suits to enjoin prosecutions. Even though this Court denies the plaintiffs' motion, their prayer also contains requests for declaratory judgments and an injunction which have not yet been ruled upon. For that reason, it would be technically premature to dismiss County Attorney Jensen as a defendant. However, the plaintiffs are strongly encouraged to consider today's ruling and decide as soon as possible whether any further equitable relief will be sought. If not, they should move to dismiss County Attorney Jensen as a defendant.